**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Luis Esteban VEYTIA–BRAVO,**
**Defendant-Appellant.**

**Nos. 78–5742, 78–5743.**

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1979.

Rehearing and Rehearing En Banc
Denied Nov. 5, 1979.

Roland E. Dahlin, II, Federal Public Defender, Charles S. Szekely, Jr., Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and GEE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Luis Esteban Veytia-Bravo was convicted on one count of using false identification to purchase ammunition, 18 U.S.C. § 922(a)(6), and one count of conspiring to export firearms without a license, 18 U.S.C. § 371; 22 U.S.C. § 2778. The district court sentenced him to two years in prison for each offense, to be served concurrently. Bravo appeals, contending that the trial court erred in admitting hearsay evidence in the form of records of a firearms dealer. He also com-

plains that comments of the prosecuting attorney during cross-examination of Bravo and in closing argument constituted prosecutorial misconduct. We affirm.

In proving both of the offenses for which Bravo was convicted, the government relied in part upon records of firearms and ammunitions sales prepared by the Globe Store (Globe), located in Brownsville, Texas. Bravo's conviction for using false identification to purchase ammunition was based upon his purchase of ammunition from Globe and two of the overt acts alleged by the government to be in furtherance of the conspiracy to export firearms without a license were purchases of firearms from Globe. Globe had gone out of business by the time of trial, and no person who had been associated with the store testified at the trial. The government, instead, established the occurrence of the firearms and ammunition purchases by means of sales records which Globe was required to maintain by regulations promulgated by the Bureau of Alcohol, Tobacco, and Firearms (ATF). See 27 C.F.R. §§ 178.124, 178.125 (1978). When a firearms dealer ceases to do business, ATF regulations require it to forward these records to the ATF for permanent storage. See 27 C.F.R. § 178.127 (1978). Prior to the introduction of the records, an ATF agent testified that the ATF was the current custodian of Globe's records, that the records being introduced were those made by Globe, and that Globe had prepared the records pursuant to ATF regulations. Bravo duly objected to the admission of the records on the ground they constituted hearsay evidence and could not be admitted under the business records exception to the hearsay rule.

Federal Rule of Evidence 803(6) excludes from the application of the hearsay rule

[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly

conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The primary emphasis of Rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced, and the trial judge exercises broad discretion in determining the inadmissibility. *United States v. Colyer,* 571 F.2d 941 (5th Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978); *United States v. Flom,* 558 F.2d 1179 (5th Cir. 1977); *United States v. Jones,* 554 F.2d 251 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). Bravo asserts that the district court abused its discretion in admitting Globe records on two grounds. First, he contends that the Supreme Court's reasoning in *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), indicates that records which a firearms dealer prepares to comply with ATF regulations and which are used solely by the ATF lack sufficient trustworthiness to be admissible under Rule 803(6). Next he argues, relying on *United States v. Davis,* 571 F.2d 1354 (5th Cir. 1978), that the government did not properly qualify the Globe records as business records under Rule 803(6) because it did not show that they were completed at or near the time of the transaction recorded, that they were made by a person with knowledge of the events recorded, or that Globe relied on the records in conducting its day-to-day business activities.

In *Palmer v. Hoffman* the Supreme Court ruled that an accident report prepared by a railroad employee pursuant to company rules was not admissible under the business records exception to the hearsay rule because it was not prepared " 'in the regular course' of business." The court found that the railroad prepared such reports primarily for use in litigation, not in the conduct of its business. 318 U.S. at 111–115, 63 S.Ct. at 479–481. In *Matthews v. United States,* 217 F.2d 409 (5th Cir. 1954), this court, relying upon *Palmer,* held that the Federal Business Records Act, 28 U.S.C. § 1732(a) (repealed 1975), did not permit the introduction of "sugar reports" which a business had compiled solely to comply with a statutory duty to record extraordinary sales of sugar. The court refused to accord the necessary trustworthiness to the records because they were not used as an integral part of the business in its own interest. The records which were found to be inadmissible in *Matthews* consisted of three IRS forms on which a feed and grain business had reported three separate sales of 3,600 pounds of sugar to the same individual. The sugar reports were made in compliance with regulations issued by the Internal Revenue Service pursuant to 26 U.S.C. § 2811 (1939) (similar provision currently codified at 26 U.S.C. § 5291), which authorized the Commissioner to require sellers of substances used in the manufacture of distilled spirits to report sales of those substances.

The Globe records, however, differ materially from those ruled inadmissible in *Palmer* and *Matthews.* They consisted of "transaction logs," which were bound volumes recording ammunition sales, and documents known as "Form 4473s," which recorded firearms sales. At trial an ATF agent testified that Globe prepared these records pursuant to ATF regulations. The ATF promulgated these regulations to facilitate enforcement of 18 U.S.C. § 922(b)–(d), which prohibits licensed dealers from selling firearms or ammunition to certain types of purchasers. For a sale of ammunition the munitions dealer must make the following record:

(c) *Ammunition disposition*—(1) *Sales to nonlicensees.* The sale or other disposition of ammunition, or of an ammunition curio or relic, shall be recorded in a bound record at the time a transaction is made, except that no record need be maintained for the sale of shotgun am-

munition, ammunition suitable for use only in rifles generally available in commerce, or component parts of these types of ammunition. Sales or other dispositions of ammunition which are interchangeable between rifles and pistols or revolvers (for example, .22 Rimfire, .45 Pistol and Revolver, and the like) must be recorded. The bound record shall be maintained in chronological order by date of sale or disposition of the ammunition, and shall be retained on the licensed premises of the licensee for a period not less than two years following the date of the recorded sale or disposition of the ammunition.

The bound record entry shall show:

(i) The date of the transaction;

(ii) The name of the manufacturer;

(iii) The caliber or gauge (or type of ammunition component);

(iv) The quantity of ammunition (or component);

(v) The name, address, and date of birth of the nonlicensee; and

(vi) The method used to establish the identity of the ammunition purchaser.

.    .    .    .    .

However, when a commercial record is made at the time a transaction is made, a licensee may delay making an entry into the bound record if he or she complies with provisions of paragraph (d) of this section.

.    .    .    .    .

(d) *Commercial records of ammunition sales.* When a commercial record is made at the time of sale or other disposition of ammunition, or of any ammunition curio or relic, and such record contains all information required by the bound record prescribed by paragraph (c) of this section, the licensed dealer or licensed collector transferring the ammunition, or ammunition curio or relic, may, for a period not exceeding 7 days following the date of such transfer, delay making the required entry into such bound record: *Provided,* That the commercial record pertaining to the transfer is; (1) maintained by the licensed dealer or licensed collector separate from other commercial documents maintained by such licensee, and (2) is readily available for inspection on the licensed premises until such time as the required entry into the bound record is made.

27 C.F.R. § 178.125(c), (d) (1978). The dealer must also record all firearms sales in a bound volume, *see* 27 C.F.R. § 178.125(e) (1978), and for each sale 27 C.F.R. § 178.124(a), (c) (1978) dictates that he:

shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, . . . unless he records the transaction on a firearms transaction record, Form 4473: .   .   . .

.    .    .    .    .

(c) Prior to making an over-the-counter transfer of a firearm to a nonlicensee who is a resident of the State in which the licensee maintains his business or collection premises, the licensed importer, licensed manufacturer, licensed dealer, or licensed collector so transferring the firearm shall obtain a Form 4473 from the transferee showing the name, address, date and place of birth, height, weight, and race of the transferee, and certification by the transferee that he is not prohibited by the Act or Title VII of the Omnibus Crime Control and Safe Streets Act of 1968 (82 Stat. 236; 18 U.S.C. Appendix) from receiving a firearm in interstate or foreign commerce. The licensee shall identify the firearm to be transferred by listing in the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm. Before transferring the firearm described in the Form 4473, the licensee (1) shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g., a driver's license), and shall note on the form the method used, and (2) if satisfied that the transferee is lawfully entitled to receive the firearm, shall sign and date the form.

Records made in compliance with these regulations, as the testimony at trial indicated Globe's records were, satisfy the trustworthiness requirements of Rule 803(6). Unlike the accident report ruled inadmissible in *Palmer,* the Globe records were not prepared primarily for use in litigation. The ATF regulations required Globe to record information about every sale it made of a firearm or ammunition, and Globe necessarily relied upon these records in the conduct of its own affairs, both to comply with the regulation's requirement that a complete record of all sales be kept and to show that it had not violated 18 U.S.C. § 922 by knowingly selling firearms or ammunition to one who could not lawfully purchase them. The existence of these same business interests also distinguishes this case from *Matthews.* The documents held inadmissible in *Matthews* were special episodic reports of only certain sales which were, regardless of size or frequency, legal. The IRS used the records to facilitate its enforcement of liquor taxes, not to detect unlawful sales activity by the keeper of the records. The business which recorded the sale had no incentive to keep the records with precision and completeness to show its compliance with any laws prohibiting certain types of transactions.

To the extent that *Matthews* might be read as concluding that no record required to be kept by law could satisfy the trustworthiness requirement of the business records exception, it would now conflict with the realities of today's business world in which many, if not most, of the records of every business are required to be kept by some government edict. Moreover, it would conflict with this court's decisions in *United States v. Ragano,* 520 F.2d 1191 (5th Cir. 1975), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976), and *United States v. Snell,* 508 F.2d 21 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 41 (1975). In *Ragano* the court concluded that reports which state law required a corporation to file were admissible as business records because the corporation prepared and filed the reports in the regular course of its business and its failure to file accurate reports might cause it to lose its corporate privileges. 520 F.2d at 1200–1201. In *Snell* the Court expressly upheld the admission under the Business Records Act of the same firearms dealer-prepared Form 4473s which are involved in the case at bar. To eliminate any possibility that these later cases might be construed to conflict, *Matthews* must be read as limited to its facts in their context. Here, we hold the method and circumstances of preparation of the Globe records indicate no lack of trustworthiness, and Federal Rule of Evidence 803(6) made them admissible upon proper authentication by their custodian.

Bravo next argues, based on *United States v. Davis,* that the government failed to show that the manner in which Globe prepared its records complied with the requirements of Rule 803(6). In *Davis* this court concluded that Rule 803(6) did not apply to the response on the bottom of an ATF form which had been filled out by a person purporting to be the records custodian of a gun manufacturer. The respondent stated that the manufacturer's records showed that it had made a particular gun and had shipped it to a gun distributor in another state. An ATF agent had mailed the form, with a specific inquiry filled in, to the manufacturer as part of an investigation to determine whether the gun had been shipped in interstate commerce. The court rejected the government's argument that the ATF form was admissible as a business record of the ATF on the grounds that the government had not shown that the form was completed by a person with knowledge, that it was completed at or near the time of the events it reported, or that it constituted a record kept in the course of a regularly conducted business activity of the ATF. 571 F.2d at 1358–60.

While the manner in which it introduced the Globe records was, at best, inartful, the government made a sufficient showing of compliance with Rule 803(6) to justify their admission. Rule 803(6) does not require that the records be prepared by the business which has custody of them. Where circumstances indicate that the rec-

ords are trustworthy, the party seeking to introduce them does not have to present the testimony of the party who kept the record or supervised its preparation. Testimony by the custodian of the record or other qualified witness that the record is authentic and was made and kept in the regular course of business will suffice to support its admission. *See United States v. Colyer,* 571 F.2d 941 (5th Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978); *United States v. Flom,* 558 F.2d 1179 (5th Cir. 1977); *United States v. Jones,* 554 F.2d 251 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977).

The ATF agent who sponsored this exhibit testified that the ATF currently had custody of the Globe records, that the records presented were those prepared by Globe, and that Globe had compiled the records pursuant to the ATF regulations. These regulations require a licensed munitions dealer as part of its regular course of business to make a contemporaneous record of every sale of firearms or ammunition. *See* 27 C.F.R. §§ 178.124, 178.125 (1978). Records kept pursuant to these regulations satisfy the requirements of Rule 803(6) that the record be made at or near the time of the event, recorded by a person with knowledge, and that it be kept in the regular course of business. The trial court did not err in admitting the Globe records.

The second ground on which Bravo argues that his conviction should be reversed concerns allegations of prosecutorial misconduct. While cross-examining Bravo, the prosecuting attorney alluded to his possible connection with the "Twenty-Third of September Group," an alleged militant terrorist organization operating throughout Mexico, and repeatedly questioned him about the arrest of his father in Mexico on munitions-related charges. In his closing argument the prosecutor again referred several times to the arrest of Bravo's father. Bravo contends that these actions of the prosecutor constituted sufficient prosecutorial misconduct to warrant reversal of his conviction.

■ At trial, however, Bravo made no objection to the prosecutor's closing argument. He objected to the questions asked during cross-examination only on grounds of repetition and lack of materiality. The district court properly overruled this objection since the prosecutor's questions were material to the issue of whether Bravo was the member of the alleged conspiracy to export ammunition who had sufficient commercial contacts in Mexico to dispose of the ammunition. To obtain a reversal of his conviction on the ground of prosecutorial misconduct, Bravo must meet the plain error standard of Federal Rule of Criminal Procedure 52(b) by showing that the prosecutor's conduct affected his substantial rights. *United States v. Miranda,* 593 F.2d 590 (5th Cir. 1979); *United States v. Gipson,* 593 F.2d 7 (5th Cir. 1979); *United States v. Greene,* 578 F.2d 648 (5th Cir. 1978), *cert. denied,* 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979).

■ At oral argument Bravo contended that this court's ruling in *United States v. Labarbera,* 581 F.2d 107 (5th Cir. 1978), established that the prosecutor's conduct denied him the right to a fair trial. In *Labarbera* the prosecutor, on cross-examination of a defendant who was charged with violating gun laws, questioned him about the arrest of his son for possession of stolen guns. The court stated that this question prejudiced the defendant by attempting to taint his character through guilt by association since the arrest of the defendant's son was irrelevant to any issue in the case. 581 F.2d at 109. That incident, however, was only one of numerous acts of misconduct by the prosecutor in *Labarbera,* and the court expressly relied on the cumulative effect of all the errors committed by the prosecutor without deciding whether any single act of misconduct by itself would warrant reversal. In this case the alleged misconduct of the prosecutor was much less egregious than that in *Labarbera,* and the prosecutor's reference to the arrest of Bravo's father on a munitions charge was relevant to the issue of which of the alleged conspirators had contacts in Mexico with munitions purchasers. Bravo has not shown any prosecutorial action which affected his substantial rights.

AFFIRMED.