# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3181

_____

United States of America,          *
                                   *
          Appellee,          *
                                   *    Appeal from the United States
    v.                         *    District Court for the
                                   *    District of North Dakota.
Ronald Spears,                     *
                                   *
          Appellant.         *

_____

Submitted: April 17, 2006
Filed: July 20, 2006

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Ronald Spears was convicted of second degree murder and aiding and abetting in violation of 18 U.S.C. §§ 1111, 1153, and 2; assault with a dangerous weapon and aiding and abetting in violation of 18 U.S.C. §§ 113(a)(3), 1153, and 2; and use of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1). He was sentenced to 156 months' imprisonment on the second degree murder charge; to a concurrent sentence of 120 months on the assault with a dangerous weapon charge; and to a consecutive sentence of 120 months on the use of firearm charge. Spears appeals, contending that the evidence was insufficient to support his conviction. We affirm.

# I.

Ivan Crissler spent July 19, 2004, with his friends in Belcourt, North Dakota, on the Turtle Mountain Indian Reservation. The group spent most of the evening cruising around town in a maroon van driven by Jesse Davis. The group was drinking and causing trouble.

That same evening, Spears and his girlfriend, Cassandra Rodewald, visited Spears's uncle, Morgan Dubois. At around 11:30 p.m., they headed home. Rodewald was driving, Spears was in the passenger's seat, and their two young children were in the back seat. Along the way, Rodewald noticed a maroon van on the side of the road. As Rodewald began to decelerate for a stop sign, the van pulled behind her and rear-ended her car, forcing her car across the intersection and into a ditch. Rodewald drove out of the ditch and towards town; the van turned and went in a different direction. Spears told Rodewald that he believed that the van belonged to Davis and that he had seen Davis driving it earlier that day.

Rodewald and Spears located a police officer to report the incident. The officer instructed them to go to the police station to report it. Because Spears had a warrant outstanding for his arrest, Rodewald dropped him off at the Belcourt Old Housing area before she went to the station. Spears was angry, and he told Rodewald that he was "going to go find this guy." Tr. at 661.

Spears returned to Dubois's residence and asked to borrow his car, a dark blue Pontiac Firebird with a light blue hood. Around this time, Davis was driving the van near the area where Dubois lived. Davis and one of the occupants of the van testified that they saw the Firebird exiting Dubois's driveway. The car followed the van, and the two vehicles chased each other on a gravel road just outside of Belcourt. Davis saw Spears in the car, and he thought that he saw a gun pointing out of the car. The last time the van turned to follow the Firebird, its occupants lost sight of the car due to the dust and the darkness.

Davis heard a shot coming from what he believed to be close range. A single bullet penetrated the rear panel of the van, striking Crissler in the neck, killing him. As Davis drove to the police station in Belcourt to report the incident, the van occupants saw the headlights of a car that was pulling out of the ditch. The van arrived at the Center just before 1:00 a.m.

At approximately 1:00 a.m., Spears went to his mother's residence and borrowed her van, leaving the Firebird in her yard. When police officers located the Firebird at this residence, they saw a rifle case in the vehicle. The person who had driven the car before Spears arrived at the Dubois residence testified that the case was not in the Firebird when Spears took the car. Rodewald testified that Spears usually kept his rifle in a green case.

Spears went to his home to change clothes. He then returned to the Belcourt Old Housing area, where the police found him speaking to Daryl Decoteau. The officers called out to Spears, who moved quickly toward them. Before being taken into custody, Spears was allowed to speak to Rodewald.

After Spears was arrested, Rodewald met up with Decoteau. Decoteau had a rifle that Rodewald recognized as belonging to Spears. Decoteau told her something to the effect that "he kept it for his bro." Tr. at 674. Rodewald went to the residence of Richard Grant and asked if the rifle could be stored there. She left the house and returned a few minutes later with Decoteau and the rifle. Decoteau handed the rifle to Grant through the back door.

## II.

Spears argues that the evidence was insufficient to convict him and that two of the government's primary witnesses were not credible. We review *de novo* the sufficiency of the evidence and view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences. United States v. Hill, 410

F.3d 468, 471 (8th Cir. 2005). We reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. Id. On appeal, we do not weigh the evidence or assess the credibility of the witnesses. United States v. Harris, 310 F.3d 1105, 1111 (8th Cir. 2002). Instead, the jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict. United States v. Morin, 338 F.3d 838, 844 (8th Cir. 2003).

Spears argues that the only evidence proved at trial was that he owned a rifle and that he asked to borrow Dubois's Firebird on the night of July 19, 2004. He argues that the evidence did not show that he was the one who committed the crimes. We disagree. Although the evidence presented in this case was largely circumstantial, we conclude that it was sufficient to support his convictions.

Spears and Davis had a history of bad blood between them, and Spears correctly believed that Davis was driving the van that forced his family's car into the ditch. Rodewald testified that Spears was angry when she dropped him off at the Belcourt Old Housing area, and he told her that he was going to look for Davis. Dubois testified that Spears asked to borrow his Firebird.

Davis and one of his passengers testified that they saw Spears in the Firebird that was chasing them that evening, and Davis testified that he thought he saw a gun. Soon after the occupants of the van lost sight of the Firebird, Crissler was shot.

The Firebird was found at Spears's mother's residence with a gun case inside. The evidence showed that the case was not in the Firebird before Spears borrowed the car and that the case was the same color as Spears's case. Rodewald testified that Decoteau was in possession of Spears's rifle after Spears's arrest and that Decoteau and Rodewald brought the rifle to Grant's home on the night of Crissler's death.

Though largely circumstantial in nature, the evidence was sufficient to sustain the verdict.  Accordingly, the judgment is affirmed.

_____