# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2058

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Vincent Leslie Mashek | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2010
Filed: June 4, 2010

_____

Before LOKEN, Chief Judge,[1] JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

After the district court[2] denied Vincent Mashek's motion to suppress evidence, a jury convicted him of attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Mashek was sentenced to

_____

[1]The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William J. Riley.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

a total of 168 months' imprisonment, and he now appeals, contesting his conviction and sentence.  We affirm.

I.

In 2006, law enforcement officers received information from several sources that Mashek was manufacturing methamphetamine in Albion, Iowa, and that he regularly carried firearms.  Police obtained logbooks from nearby pharmacies that showed that Mashek made frequent pseudoephedrine purchases between June and October of 2005.  Although Mashek ceased his personal purchases of pseudoephedrine, police surveillance of Mashek's house revealed that Lori Brown, a frequent purchaser of pseudoephedrine, regularly visited Mashek's home.

Police obtained a warrant and searched Brown's home.  They found a tube used to inhale methamphetamine, but no evidence of methamphetamine manufacturing.  Following the search, Brown began cooperating with law enforcement and was promised by the sheriff that he would not "look further" into prosecuting her for her pseudoephedrine purchases.  Brown told officers that for about a year she had been bringing Mashek pseudoephedrine in exchange for a portion of the methamphetamine that he manufactured and that she could obtain methamphetamine from Mashek.  Brown would typically provide Mashek with 200 to 300 pills every other week and return later to pick up methamphetamine.  According to Brown, Mashek was armed with a knife and a holstered handgun on at least one occasion when she dropped off the pills.

Law enforcement officers decided to conduct a controlled delivery of pseudoephedrine to Mashek with Brown's assistance.  On August 22, 2006, Brown delivered 300 pseudoephedrine pills and lithium batteries to Mashek.  Officers searched Brown before the delivery and equipped her with a digital recording device

that she could not turn off. Police followed Brown to Mashek's house and maintained surveillance while she was in the residence. According to Brown, Mashek told her that he would have the methamphetamine "done later on" and that he needed to get anhydrous ammonia and camping fuel. Based on the information on the tape[3] and Brown's statements, the officers believed that Mashek planned to steal the anhydrous ammonia from a nearby farm and manufacture methamphetamine later that day, and thus they sought and obtained a search warrant for Mashek's home.

Officer Slawomir Blondowski drafted the affidavit for the search warrant. Blondowski had participated in the surveillance of the controlled delivery, spoke with Brown following the delivery, and reviewed the recording of the delivery. Blondowski set forth in the affidavit that Brown reported that she had seen surveillance equipment on Mashek's property and that Blondowski himself had observed that equipment. In addition to the narrative of the investigation, Blondowski checked various boxes on the affidavit, including those that stated that the informant is "a well-respected family or business person," "a person of truthful reputation," and has "no motivation to falsify the information."

Executing the warrant that same day, officers found Mashek's home to be in a state of disrepair. The interior load-bearing walls and stairway had been removed, creating a large room on the first floor and causing the house to sag noticeably. The open room encompassed the kitchen and living room area; there was one separate bedroom on the first floor. The search uncovered evidence of methamphetamine production: the pills and batteries delivered earlier in the day; empty pseudoephedrine blister packs; three hydrogen chloride generators; used filters and containers with traces of methamphetamine or other chemicals created in the methamphetamine production process; and propane tanks altered in a manner consistent with anhydrous

---

[3]This recording was later accidentally deleted.

ammonia storage. Police also found multiple firearms in the residence. One loaded handgun was hanging on a hook in the kitchen area, near the methamphetamine supplies and equipment. Two additional handguns, one in a holster, were found near an altered propane tank in the first floor bedroom. A fourth loaded handgun was found in the pocket of a pair of pants in the open area of the first floor. Two .22 caliber rifles were recovered from the kitchen area on the first floor. A loaded shotgun and shotgun shells were seized from an upstairs bedroom. Police also found surveillance equipment including binoculars, a night vision scope and walkie-talkies in the kitchen area. While executing the warrant, the officers observed Mashek drive by his home, whereupon they arrested him. The officers seized a gallon of lantern fuel, which is a solvent commonly used in the production of methamphetamine, and a box of .22 rifle shells from Mashek's vehicle.

Following an evidentiary hearing, the district court denied Mashek's motion to suppress the evidence acquired during the search, which contended that the affidavit in support of the search warrant was insufficient to establish probable cause. Citing Federal Rules of Evidence 401, 403, and 801, Mashek also moved to suppress the pseudoephedrine purchase logs from various pharmacies. In denying the motion, the district court explained that Mashek could require that the government produce a witness to establish the foundation necessary to overcome a hearsay objection.

At trial, the government presented testimony that the chemicals, equipment, and surveillance items found in Mashek's home were consistent with the manufacture of methamphetamine. Officer Doug Hurley of the Iowa Division of Narcotics Enforcement testified about the relationship between guns and methamphetamine manufacturers. Describing the methamphetamine psychosis that can cause a methamphetamine user to become paranoid, Hurley testified that "it is not uncommon for that person to carry a weapon with them at all times to make sure that they can take care of themselves . . . . And it's not uncommon for a person to have weapons placed

in ideal locations throughout their house, next to a door, into their rest room, on their person, outside by a vehicle."

Brown testified about the controlled delivery. When asked if Mashek was armed on the day of the controlled delivery Brown replied, "I'm going to say yeah, yes."

Mashek's ex-wife, a long-time girlfriend, a friend, and his son all testified that Mashek used the firearms for hunting and target shooting. Mashek's long-time girlfriend testified that Mashek used propane to heat his hot tub and to fuel space heaters and grills. Mashek testified that he had never manufactured methamphetamine. He maintained that Brown arrived at his house the day before the search and asked him to take a box of drug paraphernalia so that her boyfriend would not discover it and beat her. Mashek agreed to hold the items, with the understanding that Brown would retrieve them in two days. Mashek testified that Brown returned to the property the following day and gave him the pills and the batteries, claiming that she had forgotten to give them to him the day before. According to Mashek, the firearms found at his home were unrelated to any drug activities and he used them only to hunt and target shoot. Mashek also testified that he suffered from severe hay fever, which led him to regularly buy pseudoephedrine, including purchasing the medication from different stores on the same day.

Mashek was sentenced to 108 months' imprisonment for attempt to manufacture methamphetamine (count one) and 60 months' imprisonment for possession of a firearm in furtherance of a drug trafficking crime (count three), to be served consecutively. The sentence included an obstruction of justice enhancement based on the district court's determination that Mashek had committed perjury.

On appeal, Mashek advances several arguments on appeal, which we address in turn.

## II.

### A. Search Warrant

Mashek argues that the affidavit on which the search warrant was based contained false statements that were material to the determination of probable cause. He contends the affidavit recklessly credited Brown's version of events. He argues that, under the principles set forth in Franks v. Delaware, 438 U.S. 154 (1978), the false and reckless statements rendered the affidavit insufficient to support a finding of probable cause.

To obtain relief under Franks, "a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement, or omitted a truthful statement from his warrant affidavit." United States v. Carpenter, 422 F.3d 738, 745 (8th Cir. 2005) (citation omitted). Next, the defendant must show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. United States v. Reinholz, 245 F.3d 765, 774 (8th Cir. 2001). Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood. Franks, 438 U.S. at 171; United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006). Recklessness, however, may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause." United States v. Reivich, 793 F.2d 957, 961 (8th Cir. 1986) (citation omitted).

Mashek argues that the affidavit erroneously stated that Blondowski saw Brown take pills to Mashek and heard a tape recording of Mashek discussing making

methamphetamine that day. In reality, Blondowski only saw Brown enter Mashek's home and return without the pills and heard a male voice in Mashek's home discuss making methamphetamine. Mashek also contends that Blondowski's statements that Brown was "a well-respected family or business person," "a person of truthful reputation," and has "no motivation to falsify the information" mischaracterized Brown, a known drug user with a prior felony drug conviction who was threatened with prosecution unless she cooperated. Finally, Mashek's argues that Brown's statements were inherently unreliable because she offered information to reduce her culpability.

The district court found that the exclusion of the information regarding Brown's involvement in prior drug activity would not alone have destroyed Brown's credibility in light of the officers' observation of her participation in the controlled delivery to Mashek's residence and their corroboration of Brown's information regarding the surveillance equipment in place at Mashek's residence. Further, the district court found that the information regarding Brown's prior criminal activity was not omitted with the intent to make, or in reckless disregard of whether it made, the affidavit misleading, and that the affidavit would support a finding of probable cause even if supplemented by the omitted information. The district court concluded its Franks review by observing that Mashek's preliminary showing would not even have warranted a Franks hearing.

We review the district court's factual findings on a Franks challenge for clear error and its legal determination of probable cause *de novo*. United States v. Stevens, 530 F.3d 714, 717 (8th Cir. 2008).

Having reviewed the district court's thorough order, we conclude that its findings of facts are not clearly erroneous and that its determination that the affidavit

established probable cause for the issuance of the warrant is well supported by the record. Blondowski's observation coupled with the recording established probable cause to search Mashek's residence even if the voice on the tape was not Mashek's. See United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) ("Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts to lead a prudent person to believe that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983))). Blondowski testified that this was his first warrant affidavit and that he had checked the boxes on the form believing that they were correct. He explained that his statements were based on observation of Brown's household, her candid statements about her own criminal behavior, and law enforcement investigations that partially corroborated her statements. Nothing suggests that Blondowski intentionally falsified or recklessly completed the affidavit. See Carpenter, 422 F.3d at 745 (explaining that mere negligence on the part of law enforcement officers is insufficient). The affidavit narrative explained Brown's involvement in prior drug deals with Mashek, thus informing the magistrate of her drug activity. Moreover, Brown's information was partially corroborated, indicating its reliability. See United States v. Williams, 477 F.3d 554, 559-60 (8th Cir. 2007) ("We have held that probable cause is not defeated by a failure to inform the magistrate judge of an informant's criminal history if the informant's information is at least partly corroborated.").

Mashek additionally argues that the warrant was not signed by a neutral and detached magistrate because the state court magistrate who issued the warrant was later under investigation by federal authorities. A federal magistrate judge and the district court both conducted in camera reviews of the materials from the federal investigation and concluded that they contained no information relevant to Mashek's case and nothing to suggest that the magistrate did not act in a neutral and detached

manner. Having also reviewed those materials, we agree with the district court's conclusion on this issue.

## B. Pseudoephedrine Logs and the Confrontation Clause

Mashek argues that admission of the pseudoephedrine logs violated the Confrontation Clause of the Sixth Amendment in light of Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). As recounted above, Mashek filed a motion in limine to suppress the pseudoephedrine logs, citing Federal Rules of Evidence 401, 403, and 801. In denying the motion, the district court explained:

> I'm going to overrule No. 2 in the defendant's motion in limine with the exception that I think that the defendant may have a reasonable basis to require that you have a witness that he can cross-examine so that he can test the quality of this so that we can see if, in fact, he has an ultimate hearsay objection; but with regard to its admissibility under 401 and 403, I find that it's part and parcel of the transaction, and therefore, I'm going to allow the evidence if we have the proper foundation.

During the trial the court inquired "having overruled the objection on those [401 and 403] grounds there is no objection to foundation, is that right . . . ?" Mashek responded, "[t]hat's correct."

Mashek did not raise a Confrontation Clause challenge to the pharmacy logs at trial; therefore, our review is limited to plain error. Puckett v. United States, 129 S. Ct. 1423, 1428-29 (2009). Plain error review requires Mashek to show that (1) there was an error that was not affirmatively waived, (2) the error was "plain," meaning clear and obvious, (3) the error affects his substantial rights, and (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."

United States v. Olano, 507 U.S. 725, 732-36 (1993) (citation and internal quotation marks omitted); see United States v. Marcus, 2010 WL 2025203, at *3 (May 24, 2010).

The government contends that Mashek affirmatively waived his right to confront and cross-examine a witness about the pseudoephedrine logs. Mashek responds that although he waived the right to a live witness for the specific purpose of attacking the foundational elements of the hearsay exception, he did not waive his rights under the Confrontation Clause.

In Melendez-Diaz, the Court held that admission of laboratory reports via a "certificate of analysis," rather than through the live testimony of the laboratory analyst violated the Confrontation Clause. 129 S. Ct. at 2542. The Court explained that the laboratory reports were testimonial because they were prepared for the purpose of providing evidence against the accused at trial. Id. at 2532. Assuming that Mashek did not waive his right to confrontation, Melendez-Diaz does not provide him any relief. The pseudoephedrine logs were kept in the ordinary course of business pursuant to Iowa law and are business records under Federal Rule of Evidence 803(6). Business records under Rule 803(6) are non-testimonial statements, Crawford v. Washington, 541 U.S. 36, 56 (2004), to which the Confrontation Clause does not apply. Whorton v. Bockting, 549 U.S. 406, 420 (2007); see Melendez-Diaz, 129 S. Ct. at 2539-40 (explaining that business records are typically not testimonial). Thus, the admission of the pseudoephedrine logs did not violate Mashek's constitutional confrontation rights. See United States v. Foreman, 588 F.3d 1159, 1162 n.5 (8th Cir. 2009).

C.  Jury Instructions

Mashek was charged with possessing a firearm "in furtherance of" the underlying crime of attempt to manufacture methamphetamine.  He argues that the district court plainly erred in its instruction regarding the extent of utilization necessary to establish that the defendant possessed a firearm "in furtherance of" a drug-trafficking crime.  Title 18 Section 924(c)(1)(A) of the United States Code criminalizes two separate offenses:  (1) using or carrying a firearm "during and in relation to" the underlying crime, and (2) possessing a firearm "in furtherance of" the underlying crime.  United States v. Kent, 531 F.3d 642, 654 (8th Cir. 2008); United States v. Gamboa, 439 F.3d 796, 810 (8th Cir. 2006). To use or carry a firearm "during and in relation to" an underlying crime requires that the firearm "have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 238 (1993), abrogated on other grounds by Bailey v. United States, 516 U.S. 137, 146 (1995).  To possess a firearm "in furtherance of" an underlying crime requires possession with the intent of advancing the crime.  Kent, 531 F.3d at 654.

The district court instructed the jury as follows:

The phrase "possessed in furtherance of" means the firearm must have some purpose or effect with respect to attempt to manufacture methamphetamine; its presence or involvement cannot be the result of accident or coincidence.  The firearm must facilitate or have the potential to facilitate the offense of attempt to manufacture methamphetamine.

Several months after Mashek's trial, we found a nearly identical instruction erroneous, because the first sentence of the instruction was actually the "in relation to" standard

-11-

that the Supreme Court laid out in Smith, 508 U.S. at 238. See Kent, 531 F.3d at 654-55. The "in furtherance of" standard requires a "slightly higher standard of participation" than the "during and in relation to" standard. Gamboa, 439 F.3d at 810.

Although the government concedes that Mashek is entitled to plain error review, it argues that he is not entitled to relief because he cannot demonstrate prejudice. See Marcus, 2010 WL 2025203, at *3 (explaining that plain error requires a showing that the error affected substantial rights, which typically requires a showing that the error was prejudicial); Kent, 531 F.3d at 655-56. Mashek has the burden of "satisfy[ing] the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004) (internal quotation marks omitted).

In United States v. Kent, police discovered a gun in one pocket of the defendant's coat and two bags of crack cocaine in the other pocket. 531 F.3d at 647. Kent admitted possessing the firearm and purchasing the crack cocaine to resell. Id. Searching the home where Kent lived, police uncovered crack cocaine and a loaded firearm in the bedroom where he was staying. Id. We explained that "[g]iven the evidence against Kent, it is a close question whether Kent has met his burden [of demonstrating prejudice]." Id. at 656. We then held that Kent had not established the fourth Olano requirement. Id.

Although "'[i]n furtherance of' is only a *slightly* higher standard than 'during and in relation to,'" id., we held in United States v. Rush-Richardson that there was a reasonable probability that this error affected the defendant's substantial rights. 574 F.3d 906, 912 (8th Cir. 2009). In Rush-Richardson, a search of the defendant's home yielded crack cocaine, marijuana and three firearms. Id. at 908. The guns, however,

were concealed in rooms different from those which contained measurable quantities of the drugs.  Id. at 912.  Additionally, there was no physical evidence linking Rush-Richardson to the firearms.  Id.  We concluded that "[t]he evidence here is relatively weaker to support a conviction 'in furtherance of' compared to the evidence presented in Kent."  Id.

Mashek has not demonstrated a reasonable probability that but for the challenged instruction the result of the proceeding would have been different. This is not one of the narrow circumstances in which the firearm reasonably could have been possessed "during and in relation to" drug trafficking but not "in furtherance" of drug trafficking.  The proximity of the firearms to the drugs in this case is similar to that in Kent, in which two firearms were found:  one on the defendant's person along with drugs and the other in the defendant's room along with drugs.  In Mashek's home several loaded weapons were commingled with methamphetamine manufacturing supplies and surveillance equipment. Unlike Rush-Richardson, Mashek's weapons were not hidden and were easily accessible.  The presence of multiple loaded firearms that were readily accessible in the same large room in which methamphetamine manufacturing and surveillance equipment was found raises a strong inference that the firearms were possessed in furtherance of drug trafficking.  The fact that the record does not include measurements detailing the specific proximity of the guns to the drugs does not dispel this inference.  The evidence that loaded firearms were in the same room and within the same "kitchen area" as methamphetamine manufacturing equipment negates any reasonable probability that the instructional error affected Mashek's substantive rights.

Brown's testimony that Mashek was armed with a holstered handgun on at least one occasion when she dropped off pseudoephedrine pills offers further proof that Mashek's possession of the firearms was in furtherance of the methamphetamine

trafficking. Officer Hurley testified about the paranoia and gun possession that commonly accompanies methamphetamine use and manufacturing. Although Mashek presented extensive testimony that there was a non-drug related purpose for the weapons, it is insufficient to overcome the strong inference that can be drawn from the proximity of accessible loaded weapons to manufacturing supplies. See United States v. Close, 518 F.3d 617, 619 (8th Cir. 2008) ("[T]he jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking."); see also United States v. Parish, No. 08-3421, slip op. at 13 (8th Cir. May, 24, 2010). Thus, we conclude that Mashek has failed to establish the existence of a probability of a different result that would undermine confidence in his conviction.

## D. Sufficiency of the evidence

Mashek argues that there was insufficient evidence to support his conviction for attempt to manufacture methamphetamine (count 1) and that his conviction for possession of a firearm in furtherance of a drug trafficking crime (count 3) fails as well. In the alternative, Mashek argues that insufficient evidence exists to support the firearm conviction (count 3). We review the sufficiency of the evidence *de novo*, viewing the record in the light most favorable to the verdict and accepting all reasonable inferences that support the verdict. United States v. Hamilton, 332 F.3d 1144, 1148 (8th Cir. 2003). "We reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). We do not re-weigh the evidence or assess the credibility of the witnesses. Id. The jury has the responsibility of resolving conflicts or contradictions in testimony, and we resolve any credibility issues in favor of the verdict. Id.

To prove attempt to manufacture methamphetamine, the government must establish that the defendant intentionally engaged in conduct constituting a substantial step toward the production of methamphetamine. United States v. Beltz, 385 F.3d 1158, 1163 (8th Cir. 2004). A reasonable jury could have found the evidence sufficient to convict Mashek. Brown's testimony about Mashek's methamphetamine production, the pseudoephedrine logs, the controlled delivery and the physical evidence seized from Mashek's home were sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Mashek engaged in conduct constituting a substantial step toward the production of methamphetamine. Mashek contends that the evidence did not establish that he possessed the firearms "in furtherance of" a drug trafficking crime. We disagree. In light of our analysis above and Mashek's acknowledgment of ownership of the firearms, there was sufficient evidence to support his conviction under § 924(c).

E. Obstruction of Justice Enhancement

Mashek argues that the district court erred by imposing a sentence enhancement for obstruction of justice. He contends that the district court failed to make specific findings on the elements of perjury and that the jury could have believed his testimony and still found him guilty under an aiding and abetting theory. Whether Mashek committed perjury is a factual finding. See United States v. Kessler, 321 F.3d 699, 702 (8th Cir. 2003). We will reverse the district court's imposition of a sentence enhancement for obstruction of justice only upon a showing of clear error. Id. at 702-03. To impose an obstruction of justice sentence enhancement for perjury, the district court must review the evidence and make an independent finding that, by a preponderance of the evidence, the defendant gave "false testimony concerning a material matter with the wilful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. at 704 (internal quotation marks

-15-

omitted). The district court found that the evidence of methamphetamine manufacturing supplies in Mashek's home and Mashek's purchase of large amounts of pseudoephedrine contradicted his testimony that he never manufactured methamphetamine. Mashek's testimony also included facially incredible statements that all of his pseudoephedrine purchases, including purchasing medication from multiple stores on the same day, were to treat hay fever. Given these circumstances, the district court's determination that Mashek committed perjury was not clearly erroneous.

## III.

The judgment is affirmed.

_____