EDITH H. JONES, Circuit Judge:
Melvin Towns (“Towns”) challenges his conviction and sentence for conspiracy to manufacture methamphetamine and conspiracy to possess and distribute pseu-doephedrine in violation of 21 U.S.C. § 846. He argues primarily that some of the evidence against him — pseudoephed-rine purchase logs — was introduced in violation of the business records exception to the hearsay rule and the Sixth Amendment’s Confrontation Clause. Because the purchase transaction logs conform to Federal Rule of Evidence (FRE) 803(6), and because the Supreme Court’s decision in Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), approves the use of nontestimonial business records without a live witness, we AFFIRM the conviction. Finding no reversible error in the refusal of a safety value sentence reduction, we AFFIRM the sentence as well.
BACKGROUND
In 2009, James Pieprzica, an officer with the Texas Department of Public Safety, discovered a conspiracy whereby individuals would visit multiple pharmacies to obtain large quantities of pseudoephedrine and use it to manufacture methamphetamine. With the help of cooperating witnesses and informants, Pieprzica compiled a list of alleged conspirators — including Towns — and began submitting requests to various pharmacies to obtain lists of their purchases of pseudoephedrine. Upon receipt of those lists, some of which were in electronic format sent through email and some of which were hard copies that were mailed, Pieprzica and an analyst combined the information into a spreadsheet.
Towns was charged in April of 2011 in a superseding indictment with one count of conspiracy to manufacture 500 grams or more of methamphetamine and to possess and distribute pseudoephedrine knowing that it would be used to manufacture methamphetamine. Towns was charged with furthering the conspiracy by purchasing large quantities of pseudoephedrine to be used in manufacturing methamphetamine. At trial, the Government offered pseudoephedrine purchase logs from various retailers (Walgreens, Wal-Mart, Target, and CVS) to highlight a pattern of movement and purchase implicating Towns in the conspiracy. The log spreadsheets were admitted through Pieprzica, who had received the records and their certifying affidavits from the records custodians of the companies that ran the pharmacies. Towns had filed a motion in limine to exclude the records, making the same arguments addressed in this appeal, but the district court denied it. The records were admitted at trial over Towns’s objection that they were not kept for business purposes, but as required law enforcement records. He failed to object specifically to the custodian certificates or purchase logs as having an inadequate foundation.
The government then offered several witnesses to prove the existence of the conspiracy. Co-conspirators confirmed Towns’s involvement in the plan to manufacture methamphetamine and testified that he acquired pseudoephedrine pills for their operation. He also assisted from time to time in tasks related to the actual “cooking” of the methamphetamine.
Towns testified at trial and admitted to purchasing pseudoephedrine pills in large quantities. He claimed that he took the drug to stay awake in his work as a truck driver, but denied involvement in any ille *407 gal drug manufacturing activity. Towns also denied the accuracy of the pseu-doephedrine drug purchase logs and denied purchasing pills in excess of the statutorily allowed limit of nine grams per 30 days. During cross examination, the Government asked Towns to read amounts and information contained on the logs, but did not ask about specific store visits or whether he purchased pseudoephedrine with one of his co-conspirators.
Towns was subsequently convicted by a jury. In his motion for a new trial, Towns reurged that the records were both improperly admitted as business records and violated his right to confront the witnesses against him. The motion was denied. Thereafter, the district court found that Towns was ineligible for a safety valve sentence reduction and that the court was required to sentence him to a mandatory sentence of 120 months. He timely appealed both the conviction and the sentence.
STANDARD OF REVIEW
This court reviews a district court’s evidentiary rulings for abuse of discretion, subject to harmless error review. United States v. Jackson, 636 F.3d 687, 692 (5th Cir.2011). “A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.” Id. (quoting United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir.2008)). Confrontation Clause challenges are reviewed de novo, but are also subject to harmless error review. United States v. Tirado-Tirado, 563 F.3d 117, 122 (5th Cir. 2009). The district court’s legal interpretation of a safety valve provision is reviewed de novo. United States v. Flanagan, 80 F.3d 143, 145 (5th Cir.1996).
DISCUSSION
I. Pseudoephedrine Purchase Logs
This appeal revolves around the business transaction logs obtained from the pharmacies. If this information is admissible and does not violate the Confrontation Clause, the conviction must be upheld. We hold that the pseudoephedrine purchase logs were business records for the purposes of Federal Rule of Evidence 803(6); admissible under the exception to the hearsay rule via the affidavits certifying their status; and nontestimonial records that do not violate the Sixth Amendment.[1]
A. Business Records
Towns begins by challenging the district court’s admission of the purchase logs as an abuse of discretion.[2] This contention focuses on the second and fourth requirements of the business records exception to the rule against hearsay found in FRE 803(6).[3] First, Towns argues that the logs do not qualify as true business records. He contends they were prepared *408 with a law enforcement purpose in mind and are only kept because of a Texas statute mandates their existence; the pharmacies do not (and actually cannot) use the records for day-to-day business activities. Thus they were not kept in the ordinary course of business. Alternatively, even if the logs are “business records,” they were not properly admitted because of their introduction by Officer Pieprzica, not someone with actual knowledge of the records. We reject each of these arguments.
To begin, the undue focus on the law enforcement purpose of the records has little to do with whether they are business records under the Federal Rules of Evidence. What matters is that they were kept in the ordinary course of business. It is not uncommon for a business to perform certain tasks that it would not otherwise undertake in order to fulfill governmental regulations. See United States v. Veyticir-Bravo, 603 F.2d 1187 (5th Cir.1979). This does not mean those records are not kept in the ordinary course of business. In Veytia-Bravo, this court held that firearm records that gun shops were forced to maintain by law were business records since a company could lose corporate privileges for failing to maintain them properly. Id. at 1191. To hold otherwise here would violate precedent and move the inquiry beyond the rule’s text. Fed.R.Evid. 803(6)(B) (exempting records “kept in the course of a regularly conducted activity of a business” from the rule against hearsay). The regularly conducted activity here is selling pills containing pseudoephedrine; the purchase logs are kept in the course of that activity.[4] Why they are kept is irrelevant at this stage.[5]
Next, the purchase records were properly admitted as business records because of *409 the qualifying affidavits offered to the court. For admission, a record of a regularly conducted business activity must be proven by “testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11).” Fed.R.Evid. 803(6)(D) (emphasis added). According to Rule 902(11), records of regularly conducted business activity — even copies — are self-authenticating if certified as accurate by the custodian. The party against whom the record is offered must also be given notice and opportunity to challenge the records.[6] A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6).[7]
This type of attestation aligns with the precedent set forth in Wilson v. Zapata Off-Shore Co., 939 F.2d 260 (5th Cir.1991). There, a plaintiff objected to the admission of hospital records containing an unfavorable statement about her by her sister. Specifically, the plaintiff complained that a proper foundation was not laid for the admission of business records because there was no statement in the authenticating affidavit verifying the accuracy of a report. This court held, however, that “Rule 803(6) does not require testimony that the record is accurate.” Id. at 272. It was enough that the affidavit of the record custodian (who did not make the report) “contain[ed] statements that track[ed] the language of Rule 803(6) nearly word for word.” Id.
Wilson confirms the admissibility of the records in the present case against two *410 primary objections. First, the affidavit of a record custodian is sufficient to lay the foundation for a business record. Id. There is therefore no need to have individual cashiers from each of the pharmacies testify. The drug purchases of specific individuals on some date years prior could never be remembered anyway; this is the genesis of the business records exception. What is more important — and actually required — is the testimony of the custodian[8] who ensures such records are free from adulteration after the fact. See United States v. Armstrong, 619 F.3d 380, 384-85 (5th Cir.2010). Second, any claim concerning the records’ accuracy is not the province of Rule 803(6). Wilson, 939 F.2d at 272. The pharmacies’ receipts show purchases by one Melvin Towns; his driver’s license was recorded for each of the purchases and his signature was obtained in many instances. This is all the identifying information the purchase logs evidenced. Towns was free to make arguments at trial that he was not the actual purchaser of the drugs, but accuracy does not control admissibility.
The purchase logs comprised records of a regularly conducted activity, which were made at or near the time of the purchase by individuals whose job duties entailed making those records. Because this information was certified by the records custodians’ affidavits and there was no evidence of untrustworthiness in the record-keeping procedures, the pseudoephedrine purchase logs are admissible business records. See United States v. Jones, 554 F.2d 251, 252 (5th Cir.1977) (per curiam) (holding that a proper foundation was laid for business records by recitation of the facts contained in FRE 803(6)). Once these conditions were met, admission fell within the discretion of the trial court. That discretion was not abused here.
B. Confrontation Clause
Towns next argues that admission of the pseudoephedrine purchase logs violated his Sixth Amendment rights under the Confrontation Clause.[9] He contends the logs were “testimonial” since they were prepared in anticipation of trial. This would transgress the mandate of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Supreme Court held there that the Sixth Amendment is violated when testimonial statements are introduced from a witness who did not appear at trial “unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.” Id. at 53-54, 124 S.Ct. at 1365.
This line of argument is defeated by the Supreme Court’s clear direction in Melendez-Diaz. The Court acknowledged that business records are “generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at-trial— they are not testimonial.” Melendez-Diaz, 557 U.S. at 324, 129 S.Ct. at 2539-40. The statements of a lab analyst — held to be affidavits within the core class of testimonial statements — could not be used in Me *411 lendez-Diaz absent confrontation because they were “prepared specifically for use at ... trial.” Id., 129 S.Ct. at 2540. In contrast, the business records in this case were not prepared solely with an eye toward trial. Cf Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (applying Melendez-Diaz and noting that a document created solely for an evidentiary purpose is likely testimonial). The pharmacies created these purchase logs ex ante to comply with state regulatory measures, not in response to an active prosecution. Additionally, requiring a driver’s license for purchases of pseudoephedrine deters crime. The state thus has a clear interest in businesses creating these logs that extends beyond their evidentiary value. Because the purchase logs were not prepared specifically and solely for use at trial, they are not testimonial and do not violate the Confrontation Clause.[10]
II. Safety Valve Reduction
Towns also contests the validity of his minimum ten-year sentence, 21 U.S.C. § 841(b)(1)(A)(viii), because of the district court’s denial of a safety valve sentence reduction under 18 U.S.C. § 3553(f).[11] The court expressed a willingness to consider him for a reduction, but ultimately rejected its application because Towns did not meet the final criterion by providing all information concerning the offense of conviction. Towns contends the reduction was denied because he maintained his innocence and pleaded not guilty. This argument is incorrect.
Towns’s mistake is to conflate an initial innocent plea with a continued claim of innocence post-trial: a claim the district court believed was less than forthright. Towns rightly points out that the statute does not require a defendant to plead guilty in order to qualify for the safety valve. It does, however, require the defendant, by the time of the sentencing hearing, to truthfully provide all information and evidence he has concerning the offense. 18 U.S.C. § 3553(f)(5). In this case, Towns admitted to purchasing pseu-doephedrine (an admission capable of upholding, on its own, the charge of conspiracy to produce methamphetamine) and to using methamphetamine in the past. He also admitted knowing other participants in the methamphetamine scheme for which he was convicted, but that was supposedly all he knew. Towns makes much of the fact that he took a polygraph exam to “prove” that he had no further knowledge of the conspiracy. The district judge, however, noted at sentencing that the most pertinent question — “Did you go around *412 portions of the state buying Sudafed packages illegally?” — was never asked and answered. Towns had the right to plead not guilty and the burden rested on the government to prove that he was guilty.
After his conviction, the burden shifted to Towns to provide any and all information related to the crime of conviction. The district court determines, subject to clear error review, whether the defendant has truthfully provided all such information before it employs the safety valve.[12] Once the court made a negative finding on this factor, it had no choice legally to invoke the safety valve provision. And we certainly cannot say the district court’s suspicion of Towns’s veracity was, factually speaking, a clear error.
CONCLUSION
Because the district court did not err in admitting the pseudoephedrine purchase logs or in denying Towns relief under the safety valve sentence reduction, we AFFIRM.

. Because the district court did not err, we do not reach the question of harmless error.

. It is doubtful this argument was preserved at the district court. The defendant objected to the records as law enforcement records, not business records, and on Confrontation Clause grounds. No objection was made as to the records custodians’ affidavits. The generic complaints regarding admission of the purchase logs do not seem to satisfy the FRE's requirement of particularity in the grounds of the objection. Fed.R.Evid. 103(a)(1)(B). For purposes of this analysis, however, we will evaluate the argument on its merits.

.There are five requirements for the exemption to be in effect: (A) the records must be made at or near the time of the event by — or from information transmitted by — someone with knowledge of the event; (B) they must be kept in the ordinary course of business; (C) they must be kept regularly; (D) each of these conditions must be proven by the testimony of a qualified witness or by a certifica *408 tion that complies with Rule 902(11) or (12); and (E) neither the source of information nor the circumstances in which the record is prepared can indicate a lack of trustworthiness. Fed.R.Evid. 803(6).

. It is of no consequence that the purchase logs introduced at trial were only portions (primarily those related to Melvin Towns and other conspirators) of a larger bank of business records containing all the pseudoephed-rine purchase logs for each store. A proponent may offer summaries from voluminous records. FedR.Evid. 1006.- In accordance with the Rules, the complete records were made available to the defendant and no objections were raised along these lines.

. The dissent contends that this court’s precedent in Matthews v. United States, 217 F.2d 409 (5th Cir.1954), prevents the transaction logs from being true business records. United States v. Veytia-Bravo, 603 F.2d 1187 (5th Cir.1979), teaches that this is incorrect.
The documents held inadmissible in Matthews were special episodic reports of only certain sales which were, regardless of size or frequency, legal. The IRS used the records to facilitate its enforcement of liquor taxes, not to detect unlawful sales activity by the keeper of the records. The business which recorded the sale had no incentive to keep the records with precision and completeness to show its compliance with any laws prohibiting certain types of transactions.
Id. at 1191. The records in the present case, unlike Matthews, are systematic logs of purchases that may or may not be legal. It is imperative that accurate records be kept because, unlike sugar, buyers are limited in pseudoephedrine purchase quantities. Also, retailers are accountable for these records and failure to comply with the regulations renders them subject to penalties. Tex. Health & Safety Code Ann. §§ 486.021-486.033 (West 2012).
Veytia-Bravo recognized that external incentives, which cause businesses to accurately record transactions, are what make the records sufficiently trustworthy. Here, stores must show that they have complied "with the regulation's requirement that a complete record of all sales be kept” and they must keep records to assist in restricting those “who c[an]not lawfully purchase” additional pseu-doephedrine. Veytia-Bravo, 603 F.2d at 1191. The point is that the business records *409 are acceptable under the FRE as long as outside factors ensure they have been systematically checked, regularly and continually made, relied upon for compliance with government regulations, and made according to the duty, under law, to provide accurate records of such purchases. See United States v. Wells, 262 F.3d 455, 462 (5th Cir.2001); cf. Palmer v. Hoffman, 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943) (approving, as business records, those “typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls”).
Furthermore, the dissent overlooks the section of Veytia-Bravo specifically distinguishing modern record keeping from that in Matthews. It would make little sense to treat a case that was to be "read as limited to its facts in their context” as applicable here. Veytia-Bravo, 603 F.2d at 1191. The regular and orderly recordation of pseudoephedrine purchases-for which Texas has no minimum amount required, Tex. Health & Safety Code Ann. § 486.014 — is a far cry from the haphazard logging of sugar sales in the 1950s. The guarantees of trustworthiness present today— the requirement of photo identification for purchases and the immediate computerized logging of sales — remove this case from the "limited” facts of Matthews and align it with Veytia-Bravo, the admitted controlling authority-

. That opportunity was afforded the defense and is why the claim at oral argument against the records' authenticity was new and thus untimely.

. The best example of the proper manner in which to present business records can be seen in O’Connor’s Federal Forms. In this case, each of the pharmacies — Walgreens, Wal-Mart, Target, and CVS — provided affidavits from their respective records custodians that mimic Federal Civil Form 8C:3. O'Connor’s Federal Civil Forms 1256 (2012). Its language tracks Rule 803(6) nearly word for word. Contrary to the dissent’s assertion in Footnote 7, a party does not need to explain the record-keeping system of the organization. It is enough that the 803(6) requirements are certified. A proper foundation was laid in this case by including things such as names, titles, record descriptions, stores, etc. Because the rule does not require anything more for criminal cases than civil ones, we must accept these attestations as authoritative. We are interested in accuracy in a hearsay-type context, a concern identical in both civil and criminal cases, but the Rules of *410 Evidence allow for self-authenticating records to be admitted and then weighed by the jury.

. The disjunctive nature of FRE 803(6)(D) eliminates the need to put each custodian on the stand to verify the respective business records. The qualifying information may come through live testimony or certification. Agent Pieprzica’s introduction of the custodian affidavits was therefore sufficient.

. A criminal defendant has the right “to be confronted with the witnesses against him.” U.S. Const amend. VI.

. We are not the first circuit to reach this holding. United States v. Mashek, 606 F.3d 922 (8th Cir.2010). The Eighth Circuit held that “pseudoephedrine logs were kept in the ordinary course of business pursuant to Iowa law and are business records under Federal Rule of Evidence 803(6)” that are non-testimonial statements "to which the Confrontation Clause does not apply.” Id. at 930. Though Mashek was decided under plain error review — as this case could be on the business records challenge — the court did not rely on that standard in its decision to admit the logs and hold the Sixth Amendment not violated. In fact, the Eighth Circuit explicitly "[a]ssum[ed] that Mashek did not waive his right to confrontation” before stating that "Melendez-Diaz d[id] not provide him any relief.” Id.

. This safety valve provision allows for a reduction in sentence if: (1) the defendant does not have more than one criminal history point; (2) no violence, credible threats of violence, or dangerous weapons were used in the offense; (3) the offense did not result in death or serious bodily injury to anyone; (4) the defendant was not a leader of others in the offense; and (5) the defendant provides all information and evidence to the government concerning the offense by the time of the sentencing hearing.

. The district court's determination was made, in large part, on Towns’ statement at the beginning of his safety valve hearing: "Well, it’s just like I said in the trial, I didn't furnish Mike Sanders with all these pills and manufacture drugs with him, and you know, I don't know how else to put it, other than what I said at the trial. And there's really nothing else I have to say about that, sir.” The court did not believe Towns and thus denied the safety valve.