# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 30, 2013

Lyle W. Cayce
Clerk

No. 11-50948

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MELVIN DAVID TOWNS, JR.,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, JONES, and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Melvin Towns ("Towns") challenges his conviction and sentence for conspiracy to manufacture methamphetamine and conspiracy to possess and distribute pseudoephedrine in violation of 21 U.S.C. § 846. He argues primarily that some of the evidence against him—pseudoephedrine purchase logs—was introduced in violation of the business records exception to the hearsay rule and the Sixth Amendment's Confrontation Clause. Because the purchase transaction logs conform to Federal Rule of Evidence (FRE) 803(6), and because the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527 (2009), approves the use of nontestimonial business records without a live witness, we **AFFIRM** the conviction. Finding no reversible error

in the refusal of a safety value sentence reduction, we **AFFIRM** the sentence as well.

## BACKGROUND

In 2009, James Pieprzica, an officer with the Texas Department of Public Safety, discovered a conspiracy whereby individuals would visit multiple pharmacies to obtain large quantities of pseudoephedrine and use it to manufacture methamphetamine. With the help of cooperating witnesses and informants, Pieprzica compiled a list of alleged conspirators—including Towns—and began submitting requests to various pharmacies to obtain lists of their purchases of pseudoephedrine. Upon receipt of those lists, some of which were in electronic format sent through email and some of which were hard copies that were mailed, Pieprzica and an analyst combined the information into a spreadsheet.

Towns was charged in April of 2011 in a superseding indictment with one count of conspiracy to manufacture 500 grams or more of methamphetamine and to possess and distribute pseudoephedrine knowing that it would be used to manufacture methamphetamine. Towns was charged with furthering the conspiracy by purchasing large quantities of pseudoephedrine to be used in manufacturing methamphetamine. At trial, the Government offered pseudoephedrine purchase logs from various retailers (Walgreens, Wal-Mart, Target, and CVS) to highlight a pattern of movement and purchase implicating Towns in the conspiracy. The log spreadsheets were admitted through Pieprzica, who had received the records and their certifying affidavits from the records custodians of the companies that ran the pharmacies. Towns had filed a motion *in limine* to exclude the records, making the same arguments addressed in this appeal, but the district court denied it. The records were admitted at trial over Towns's objection that they were not kept for business purposes, but as required

No. 11-50948

law enforcement records. He failed to object specifically to the custodian certificates or purchase logs as having an inadequate foundation.

The government then offered several witnesses to prove the existence of the conspiracy. Co-conspirators confirmed Towns's involvement in the plan to manufacture methamphetamine and testified that he acquired pseudoephedrine pills for their operation. He also assisted from time to time in tasks related to the actual "cooking" of the methamphetamine.

Towns testified at trial and admitted to purchasing pseudoephedrine pills in large quantities. He claimed that he took the drug to stay awake in his work as a truck driver, but denied involvement in any illegal drug manufacturing activity. Towns also denied the accuracy of the pseudoephedrine drug purchase logs and denied purchasing pills in excess of the statutorily allowed limit of nine grams per 30 days. During cross examination, the Government asked Towns to read amounts and information contained on the logs, but did not ask about specific store visits or whether he purchased pseudoephedrine with one of his co-conspirators.

Towns was subsequently convicted by a jury. In his motion for a new trial, Towns reurged that the records were both improperly admitted as business records and violated his right to confront the witnesses against him. The motion was denied. Thereafter, the district court found that Towns was ineligible for a safety valve sentence reduction and that the court was required to sentence him to a mandatory sentence of 120 months. He timely appealed both the conviction and the sentence.

## STANDARD OF REVIEW

This court reviews a district court's evidentiary rulings for abuse of discretion, subject to harmless error review. *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the

No.  11-50948

evidence." *Id.* (quoting *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008).  Confrontation Clause challenges are reviewed *de novo*, but are also subject to harmless error review.  *United States v. Tirado-Tirado*, 563 F.3d 117, 122 (5th Cir. 2009).  The district court's legal interpretation of a safety valve provision is reviewed *de novo*.  *United States v. Flanagan*, 80 F.3d 143, 145 (5th Cir. 1996).

## DISCUSSION

### I.  Pseudoephedrine Purchase Logs

This appeal revolves around the business transaction logs obtained from the pharmacies.  If this information is admissible and does not violate the Confrontation Clause, the conviction must be upheld.  We hold that the pseudoephedrine purchase logs were business records for the purposes of Federal Rule of Evidence 803(6); admissible under the exception to the hearsay rule via the affidavits certifying their status; and nontestimonial records that do not violate the Sixth Amendment.[1]

### A. Business Records

Towns begins by challenging the district court's admission of the purchase logs as an abuse of discretion.[2]  This contention focuses on the second and fourth requirements of the business records exception to the rule against hearsay found in FRE 803(6).[3]  First, Towns argues that the logs do not qualify as true business

---

[1] Because the district court did not err, we do not reach the question of harmless error.

[2] It is doubtful this argument was preserved at the district court.  The defendant objected to the records as law enforcement records, not business records, and on Confrontation Clause grounds.  No objection was made as to the records custodians' affidavits.  The generic complaints regarding admission of the purchase logs do not seem to satisfy the FRE's requirement of particularity in the grounds of the objection.  FED. R. EVID. 103(a)(1)(B).  For purposes of this analysis, however, we will evaluate the argument on its merits.

[3] There are five requirements for the exemption to be in effect: (A) the records must be made at or near the time of the event by—or from information transmitted by—someone with knowledge of the event; (B) they must be kept in the ordinary course of business; (C) they must

4

No. 11-50948

records.  He contends they were prepared with a law enforcement purpose in mind and are only kept because of a Texas statute mandates their existence; the pharmacies do not (and actually cannot) use the records for day-to-day business activities.  Thus they were not kept in the ordinary course of business. Alternatively, even if the logs are "business records," they were not properly admitted because of their introduction by Officer Pieprzica, not someone with actual knowledge of the records.  We reject each of these arguments.

To begin, the undue focus on the law enforcement purpose of the records has little to do with whether they are business records under the Federal Rules of Evidence.  What matters is that they were kept in the ordinary course of business.  It is not uncommon for a business to perform certain tasks that it would not otherwise undertake in order to fulfill governmental regulations.  *See United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979).  This does not mean those records are not kept in the ordinary course of business.  In *Veytia-Bravo*, this court held that firearm records that gun shops were forced to maintain by law were business records since a company could lose corporate privileges for failing to maintain them properly.  *Id.* at 1191.  To hold otherwise here would violate precedent and move the inquiry beyond the rule's text. Fed. R. Evid. 803(6)(B) (exempting records "kept in the course of a regularly conducted activity of a business" from the rule against hearsay).  The regularly conducted activity here is selling pills containing pseudoephedrine; the purchase

---

be kept regularly; (D) each of these conditions must be proven by the testimony of a qualified witness or by a certification that complies with Rule 902(11) or (12); and (E) neither the source of information nor the circumstances in which the record is prepared can indicate a lack of trustworthiness.  FED. R. EVID. 803(6).

logs are kept in the course of that activity.[4]  Why they are kept is irrelevant at this stage.[5]

---

[4] It is of no consequence that the purchase logs introduced at trial were only portions (primarily those related to Melvin Towns and other conspirators) of a larger bank of business records containing all the pseudoephedrine purchase logs for each store.  A proponent may offer summaries from voluminous records.  FED. R. EVID. 1006.  In accordance with the Rules, the complete records were made available to the defendant and no objections were raised along these lines.

[5] The dissent contends that this court's precedent in *Matthews v. United States*, 217 F.2d 409 (5th Cir. 1954), prevents the transaction logs from being true business records. *United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979), teaches that this is incorrect.

> The documents held inadmissible in *Matthews* were special episodic reports of only certain sales which were, regardless of size or frequency, legal.  The IRS used the records to facilitate its enforcement of liquor taxes, not to detect unlawful sales activity by the keeper of the records.  The business which recorded the sale had no incentive to keep the records with precision and completeness to show its compliance with any laws prohibiting certain types of transactions.

*Id.* at 1191.  The records in the present case, unlike *Matthews*, are systematic logs of purchases that may or may not be legal.  It is imperative that accurate records be kept because, unlike sugar, buyers are limited in pseudoephedrine purchase quantities.  Also, retailers are accountable for these records and failure to comply with the regulations renders them subject to penalties.  TEX. HEALTH & SAFETY CODE ANN. §§ 486.021-486.033 (West 2012).

 *Veytia-Bravo* recognized that external incentives, which cause businesses to accurately record transactions, are what make the records sufficiently trustworthy.  Here, stores must show that they have complied "with the regulation's requirement that a complete record of all sales be kept" and they must keep records to assist in restricting those "who c[an]not lawfully purchase" additional pseudoephedrine.  *Veytia-Bravo*, 603 F.2d at 1191.  The point is that the business records are acceptable under the FRE as long as outside factors ensure they have been systematically checked, regularly and continually made, relied upon for compliance with government regulations, and made according to the duty, under law, to provide accurate records of such purchases.  *See United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001); *cf. Palmer v. Hoffman*, 318 U.S. 109, 113, 63 S. Ct. 477, 480 (1943) (approving, as business records, those "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls").

 Furthermore, the dissent overlooks the section of *Veytia-Bravo* specifically distinguishing modern record keeping from that in *Matthews*.  It would make little sense to treat a case that was to be "read as limited to its facts in their context" as applicable here. *Veytia-Bravo*, 603 F.2d at 1191. The regular and orderly recordation of pseudoephedrine purchases—for which Texas has no minimum amount required, TEX. HEALTH & SAFETY CODE ANN. § 486.014—is a far cry from the haphazard logging of sugar sales in the 1950s.  The guarantees of trustworthiness present today—the requirement of photo identification for purchases and the immediate computerized logging of sales—remove this case from the "limited" facts of *Matthews* and align it with *Veytia-Bravo*, the admitted controlling authority.

No. 11-50948

Next, the purchase records were properly admitted as business records because of the qualifying affidavits offered to the court. For admission, a record of a regularly conducted business activity must be proven by "testimony of the custodian or another qualified witness, *or by a certification* that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D) (emphasis added). According to Rule 902(11), records of regularly conducted business activity—even copies—are self-authenticating if certified as accurate by the custodian. The party against whom the record is offered must also be given notice and opportunity to challenge the records.[6] A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6).[7]

This type of attestation aligns with the precedent set forth in *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir. 1991). There, a plaintiff objected to the admission of hospital records containing an unfavorable statement about her by her sister. Specifically, the plaintiff complained that a proper foundation was not laid for the admission of business records because there was no statement in the authenticating affidavit verifying the accuracy of a report. This court held, however, that "Rule 803(6) does not require testimony that the record is accurate." *Id.* at 272. It was enough that the affidavit of the record custodian

---

[6] That opportunity was afforded the defense and is why the claim at oral argument against the records' authenticity was new and thus untimely.

[7] The best example of the proper manner in which to present business records can be seen in *O'Connor's Federal Forms*. In this case, each of the pharmacies—Walgreens, Wal-Mart, Target, and CVS—provided affidavits from their respective records custodians that mimic Federal Civil Form 8C:3. O'CONNOR'S FEDERAL CIVIL FORMS 1256 (2012). Its language tracks Rule 803(6) nearly word for word. Contrary to the dissent's assertion in Footnote 7, a party does *not* need to explain the record-keeping system of the organization. It is enough that the 803(6) requirements are certified. A proper foundation was laid in this case by including things such as names, titles, record descriptions, stores, etc. Because the rule does not require anything more for criminal cases than civil ones, we must accept these attestations as authoritative. We are interested in accuracy in a hearsay-type context, a concern identical in both civil and criminal cases, but the Rules of Evidence allow for self-authenticating records to be admitted and then weighed by the jury.

No. 11-50948

(who did not make the report) "contain[ed] statements that track[ed] the language of Rule 803(6) nearly word for word." *Id.*

*Wilson* confirms the admissibility of the records in the present case against two primary objections. First, the affidavit of a record custodian is sufficient to lay the foundation for a business record. *Id.* There is therefore no need to have individual cashiers from each of the pharmacies testify. The drug purchases of specific individuals on some date years prior could never be remembered anyway; this is the genesis of the business records exception. What is more important—and actually required—is the testimony of the custodian[8] who ensures such records are free from adulteration after the fact. *See United States v. Armstrong*, 619 F.3d 380, 384–85 (5th Cir. 2010). Second, any claim concerning the records' accuracy is not the province of Rule 803(6). *Wilson*, 939 F.2d at 272. The pharmacies' receipts show purchases by one Melvin Towns; his driver's license was recorded for each of the purchases and his signature was obtained in many instances. This is all the identifying information the purchase logs evidenced. Towns was free to make arguments at trial that he was not the actual purchaser of the drugs, but accuracy does not control admissibility.

The purchase logs comprised records of a regularly conducted activity, which were made at or near the time of the purchase by individuals whose job duties entailed making those records. Because this information was certified by the records custodians' affidavits and there was no evidence of untrustworthiness in the record-keeping procedures, the pseudoephedrine purchase logs are admissible business records. *See United States v. Jones*, 554 F.2d 251, 252 (5th Cir. 1977) (per curiam) (holding that a proper foundation was laid for business records by recitation of the facts contained in FRE 803(6)).

---

[8] The disjunctive nature of FRE 803(6)(D) eliminates the need to put each custodian on the stand to verify the respective business records. The qualifying information may come through live testimony *or* certification. Agent Pieprzica's introduction of the custodian affidavits was therefore sufficient.

No.  11-50948

Once these conditions were met, admission fell within the discretion of the trial court.  That discretion was not abused here.

## B. Confrontation Clause

Towns next argues that admission of the pseudoephedrine purchase logs violated his Sixth Amendment rights under the Confrontation Clause.[9]  He contends the logs were "testimonial" since they were prepared in anticipation of trial.  This would transgress the mandate of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).  The Supreme Court held there that the Sixth Amendment is violated when testimonial statements are introduced from a witness who did not appear at trial "unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54, 124 S. Ct. at 1365.

This line of argument is defeated by the Supreme Court's clear direction in *Melendez-Diaz*.  The Court acknowledged that business records are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324, 129 S. Ct. at 2539–40.  The statements of a lab analyst—held to be affidavits within the core class of testimonial statements—could not be used in *Melendez-Diaz* absent confrontation because they were "prepared specifically for use at . . . trial." *Id.*, 129 S. Ct. at 2540.  In contrast, the business records in this case were not prepared solely with an eye toward trial. *Cf. Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2717 (2011) (applying *Melendez-Diaz* and noting that a document created solely for an evidentiary purpose is likely testimonial).  The pharmacies created these purchase logs *ex ante* to comply with state

---

[9] A criminal defendant has the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI.

regulatory measures, not in response to an active prosecution. Additionally, requiring a driver's license for purchases of pseudoephedrine deters crime. The state thus has a clear interest in businesses creating these logs that extends beyond their evidentiary value. Because the purchase logs were not prepared specifically and solely for use at trial, they are not testimonial and do not violate the Confrontation Clause.[10]

## II. Safety Valve Reduction

Towns also contests the validity of his minimum ten-year sentence, 21 U.S.C. § 841(b)(1)(A)(viii), because of the district court's denial of a safety valve sentence reduction under 18 U.S.C. § 3553(f).[11] The court expressed a willingness to consider him for a reduction, but ultimately rejected its application because Towns did not meet the final criterion by providing all information concerning the offense of conviction. Towns contends the reduction was denied because he maintained his innocence and pleaded not guilty. This argument is incorrect.

Towns's mistake is to conflate an initial innocent plea with a continued claim of innocence post-trial: a claim the district court believed was less than forthright. Towns rightly points out that the statute does not require a

---

[10] We are not the first circuit to reach this holding. *United States v. Mashek*, 660 F.3d 922 (8th Cir. 2010). The Eighth Circuit held that "pseudoephedrine logs were kept in the ordinary course of business pursuant to Iowa law and are business records under Federal Rule of Evidence 803(6)" that are non-testimonial statements "to which the Confrontation Clause does not apply." *Id.* at 930. Though *Mashek* was decided under plain error review—as this case could be on the business records challenge—the court did not rely on that standard in its decision to admit the logs and hold the Sixth Amendment not violated. In fact, the Eighth Circuit explicitly "[a]ssum[ed] that Mashek did not waive his right to confrontation" before stating that "*Melendez-Diaz* d[id] not provide him any relief." *Id.*

[11] This safety valve provision allows for a reduction in sentence if: (1) the defendant does not have more than one criminal history point; (2) no violence, credible threats of violence, or dangerous weapons were used in the offense; (3) the offense did not result in death or serious bodily injury to anyone; (4) the defendant was not a leader of others in the offense; and (5) the defendant provides all information and evidence to the government concerning the offense by the time of the sentencing hearing.

No. 11-50948

defendant to plead guilty in order to qualify for the safety valve. It does, however, require the defendant, by the time of the sentencing hearing, to truthfully provide all information and evidence he has concerning the offense. 18 U.S.C. § 3553(f)(5). In this case, Towns admitted to purchasing pseudoephedrine (an admission capable of upholding, on its own, the charge of conspiracy to produce methamphetamine) and to using methamphetamine in the past. He also admitted knowing other participants in the methamphetamine scheme for which he was convicted, but that was supposedly all he knew. Towns makes much of the fact that he took a polygraph exam to "prove" that he had no further knowledge of the conspiracy. The district judge, however, noted at sentencing that the most pertinent question—"Did you go around portions of the state buying Sudafed packages illegally?"—was never asked and answered. Towns had the right to plead not guilty and the burden rested on the government to prove that he was guilty.

After his conviction, the burden shifted to Towns to provide any and all information related to the crime of conviction. The district court determines, subject to clear error review, whether the defendant has truthfully provided all such information before it employs the safety valve.[12] Once the court made a negative finding on this factor, it had no choice legally to invoke the safety valve provision. And we certainly cannot say the district court's suspicion of Towns's veracity was, factually speaking, a clear error.

---

[12] The district court's determination was made, in large part, on Towns' statement at the beginning of his safety valve hearing: "Well, it's just like I said in the trial, I didn't furnish Mike Sanders with all these pills and manufacture drugs with him, and you know, I don't know how else to put it, other than what I said at the trial. And there's really nothing else I have to say about that, sir." The court did not believe Towns and thus denied the safety valve.

No.  11-50948

## CONCLUSION

Because the district court did not err in admitting the pseudoephedrine purchase logs or in denying Towns relief under the safety valve sentence reduction, we **AFFIRM**.

No.  11-50948

GRAVES, Circuit Judge, dissenting.

Because the district court erred in admitting the pseudoephedrine logs as business records and in refusing to consider a safety valve sentence reduction, I would reverse and remand.  Therefore, I respectfully dissent.

## FACTS AND PROCEDURAL HISTORY[1]

James Pieprzica, an officer with the Texas Department of Public Safety, testified that law enforcement obtained information in 2009 regarding individuals who were visiting multiple pharmacies to obtain products containing pseudoephedrine in excess of the statutorily allowed amount and that the pseudoephedrine was being used to manufacture methamphetamine (meth). Pieprzica compiled a list of individuals and began submitting requests to various pharmacies to obtain lists of their purchases of pseudoephedrine.  Upon receipt of those lists, some of which were in electronic format sent through email and some of which were hard copies that were mailed, Pieprzica and an analyst combined the information into a spreadsheet.

That investigation led to the arrest of Michael Sanders[2] and more than a dozen other individuals in October of 2009.  Sanders was charged along with Timothy Wilson, Robbie Heldarsen and Beth Grier, who is the sister of the appellant, Melvin David Towns, Jr.[3]  Sanders pleaded guilty and, in exchange for a recommendation of a reduced sentence, agreed to provide the Government with additional information. During Sanders' initial meeting with investigators in December 2009, he implicated several other people, but not the appellant, Towns.  During a second meeting in February 2010, after being told that

---

[1] A recitation of the facts is necessary to demonstrate the lack of other evidence and the significance of the transaction logs to the jury's verdict.

[2] Sanders, age 51, testified that he had used meth for approximately thirty years and was hoping for a reduction of his possible twenty year sentence.  He also testified that his daily use had cost him his job, his wife and custody of his daughter.

[3] Towns testified that he and Grier were not particularly close.

13

investigators knew he was not telling the truth and being asked about Towns, Sanders implicated Towns. Sanders testified that he "lied" during the first meeting.

During Towns' trial in 2011, Sanders testified that he had sold Towns meth and "possibly" purchased meth from Towns "a long time ago." Specifically, Sanders said it had been "probably ten years ago or so." Sanders also testified that more recently he had manufactured or "cooked" meth in a tool shed on a ranch owned by Towns and Towns' sister, Grier, near Gonzales. Sanders said he was on the ranch property at different times both "with and without" Towns' permission. Towns was living in the town of Navasota at the time. Grier lived in the old family home some miles from the ranch house, which Towns had rented to a tenant for several years. Sanders lived with Grier. The ranch had a gate with locks and was accessible by numerous people, including people who rented or resided there, hunters and others.

Sanders said that he never saw Towns cook meth, but that Towns had watched him cook meth on occasion and "sometimes [Towns] would like draw the anhydrous [ammonia] off for me and, you know, just little stuff." On those occasions, Sanders said he shared the meth with Towns. The time period over which this manufacturing occurred is unclear based on Sanders' testimony, but it appears that the manufacturing occurred for three or four years until about six months before Sanders' arrest in October 2009 - or approximately April 2009. Sanders testified that during this period he and Towns' also manufactured meth on the property of Don Cohorst in Washington County.

Further, Sanders testified that, in addition to various other people, he and Towns both provided pseudoephedrine for manufacturing meth and on occasion traveled to purchase pseudoephedrine at various stores in the Houston and Conroe areas. With regard to the pseudoephedrine logs, Sanders was asked the following:

14

No. 11-50948

Q.   All right.  During your prosecution, did you have the opportunity to look at some pseudo logs –
A.   Yes, sir.
Q.   – detailing the pseudoephedrine, the times you purchased pseudoephedrine tablets?
A.   Yes, sir.
Q.   I believe those logs pertain to CVS, Wal-Mart, Walgreens, possibly Target?
A.   Uh-huh.
Q.   Did you and Mr. Towns ever purchase pseudoephedrine at any other retailers, such as HEB or –
A.   Well, yes.  HEB.  Very seldom, but every now and then, yes, HEB.

Sanders was not asked about specific dates, times, locations or whether Towns was with him at those specific times.  Likewise, Sanders offered no testimony regarding specific trips to purchase pseudoephedrine with Towns.

Sanders also implicated Joey West, who was arrested and charged for conspiracy to manufacture meth along with Josh Harkey and Tony Harkey. West, a convicted drug offender who was on probation, also cooperated with officials in exchange for a recommendation of a lighter sentence.  West, also a meth user, was taught how to manufacture meth by Sanders around 2005 and had also cooked on the ranch property in Gonzales.  West's "good friend," Ken Nippert, rented the ranch house from Towns and gave West access to a building near the house.  West testified that he never cooked meth on the property when Towns was there, but that he had seen Towns at the ranch property when Sanders was cooking meth.  West said that he never saw Towns manufacture any meth.  West also testified as follows:

Q.   All right.  Did you ever do any methamphetamine business with Mr. Towns?
A.   No transactions.
Q.   Never bartered –
A.   No, sir.
Q.   – or sold him any methamphetamine?
A.   No, sir.

15

Q.   Did you ever get any pills from him?
A.   No, sir.
Q.   Did Mr. Towns ever do anything to exclude you from the property?
A.   No, sir.
Q.   Did you ever get any pills from Mr. Towns?
A.   At the end of – right whenever – I think it was around Christmastime, before I got arrested, yes, sir.
. . .
Q.   Tell the jury about that.
A.   He brought me some pills to cook some methamphetamines [sic], and I traded him some drugs for the boxes of pills.
Q.   Okay.  And where did he deliver the pills to you?
A.   At his house.  I mean, at the residence out there.
Q.   And were these pseudoephedrine tablets?
A.   Yes, sir.
Q.   But you never actually saw him cook, correct?
A.   No, sir.
Q.   And you never cooked in front of him?
A.   No, sir.

West was arrested in April of 2010 in Harris County.  He testified that, although he still resided in Gonzalez, he had gone to Houston after the initial round of arrests in Gonzales County in October of 2009 because he knew there was a warrant for his arrest.  West's claim of returning to the same location in Gonzales County to make additional meth in December of 2009 with pills obtained from Towns contradicts West's other testimony that he never got pills from Towns and that he knew about the arrests in October of 2009 and went to Houston.

Towns was indicted on July 21, 2010, and charged in a superseding indictment on April 6, 2011, for one count of conspiracy to manufacture 500 grams or more of methamphetamine and to possess and distribute pseudoephedrine knowing that it would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (c)(1), (c)(2), 846.  Towns was further charged with purchasing in excess of 100 grams of

No. 11-50948

pseudoephedrine during the period of the conspiracy, from January of 2008 to March of 2010, to be used by him and others to manufacture meth.

At trial, the Government offered pseudoephedrine logs of various retailers. Towns filed a motion in limine to exclude the records because they were not business records under Federal Rule of Evidence 803(6) since they were calculated for use in court by law enforcement and not in the conduct of business functions. Further, Towns argued that even if the records were admissible as business records, they were inadmissible under the Confrontation Clause. The district court denied the motion in limine and admitted the records and evidence at trial over Towns' objections. The logs were admitted through Pieprzica.

Towns testified at trial and admitted to purchasing pseudoephedrine that he took to stay awake in his work as a truck driver. Towns denied being involved in any drug activity with Sanders, West or Grier. Towns also denied the accuracy of the pseudoephedrine logs and denied purchasing amounts in excess of the statutorily allowed limit of nine grams per 30 days. During cross examination, the Government asked Towns to recite amounts and information contained on the logs, but did not ask about any specific store visits or whether he purchased pseudoephedrine with Sanders.

Towns was subsequently convicted. In his motion for new trial, Towns asserted that the records were improperly admitted as business records and violated his right to confront the witnesses against him. The district court denied the motion for new trial. Thereafter, the district found that, because Towns continued to assert his innocence, he was ineligible for a safety valve and the court was required to sentence him to a mandatory sentence of 120 months.

**STANDARD OF REVIEW**

This court reviews a district court's evidentiary rulings for abuse of discretion, subject to harmless error review. *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011). "A trial court abuses its discretion when its ruling is

17

based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id*.  Confrontation Clause challenges are reviewed de novo, but are subject to harmless error review.  *United States v. Tirado-Tirado*, 563 F.3d 117, 122 (5th Cir. 2009).  The district court's determination of whether the defendant has provided full disclosure is a factual finding reviewed for clear error.  *United States v. Flanagan*, 80 F.3d 143, 145 (5th Cir. 1996).  The district court's legal interpretation of a safety valve provision is reviewed de novo.  *Id*.

## DISCUSSION

### I. *Inapplicability of business records exception*

The pseudoephedrine logs were entered into evidence under the business records exception to the hearsay rule.  Fed. R. Evid. 803(6).  The logs are statutorily required to be kept under 21 U.S.C. § 830 and Texas Health and Safety Code § 486.014.

Rule 803(6) creates an exception to the hearsay rule for records kept in the ordinary course of a regularly conducted business activity.  The exception applies if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

As the comment to Rule 803(6) states, while all participants may be acting routinely, if, "however, the supplier of the information does not act in the regular

No. 11-50948

course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." Fed. R. Evid. 803(6), n. to para. (6). Despite the majority's statements that "any claim concerning the records' accuracy is not the province of Rule 803(6)" and that "accuracy does not control admissibility." Further, an "illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not." *Id. See also Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930).

> Rule 902(11) provides that:
>
> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

This Court has not decided whether pseudoephedrine logs constitute business records for purposes of Rule 803(6).[4] As Towns asserts, the transaction logs at issue here are prepared in accordance with federal and state law. Both the state and federal statutes indicate that the requirements are based on law enforcement purposes. As discussed herein, the majority

---

[4] In the unpublished opinion of *United States v. Fox*, 487 Fed. App'x 165 (5th Cir. 2012), this Court per curiam affirmed a pseudoephedrine conviction where logs were admitted at trial. This Court found that "pseudoephedrine logs bearing the signature 'Tina Fox' for each possession conviction as well as the testimonies of Agent Rodney Tandy, handwriting expert Kenneth Crawford, and co-conspirators" sufficient to support the convictions of Fox. *Id.* at 166, 167. This Court further said, "[e]ven if Fox is correct that her possession conviction on Count 47 was supported in part by a pharmacy log that was not properly verified, the jury was free to rely upon the log in question because, as Fox concedes, she failed to object to its admission into evidence."

No. 11-50948

erroneously finds that the reason the records are kept or their subsequent use has little, if anything, to do with whether the logs are business records.

The majority cites *United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir. 1979), for the holding that firearms records that gun shops were required to maintain were business records since a company could lose corporate privileges for failing to maintain them.[5]  The majority then concludes that the pseudoephedrine logs are business records because they are kept during the course of the regularly conducted activity of "selling pills containing pseudoephedrine."  I disagree with the majority's finding that the logs are business records.  However, I agree that *Veytia-Bravo* is controlling authority.

In *Veytia-Bravo*, Judge Charles Clark, writing for the panel, held that the district court did not err in admitting records of firearms and ammunitions sales as business records.  After acknowledging that the "primary emphasis of Rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced," the Court then engaged in a thorough analysis of the applicable authority and distinguished prior cases finding records inadmissible.[6]  Specifically, this Court found that Globe, the firearms dealer, "necessarily relied upon these records in the conduct of its own affairs, both to comply with the regulation's requirement that a complete record of all sales be kept and to show that it had not violated 18 U.S.C. § 922 by knowingly selling firearms or ammunition to one who could not lawfully purchase them."  *Veytia-Bravo*, 603

---

[5] I note that the "corporate privilege" language actually comes from the discussion of *United States v. Rogano*, 520 F.2d 1191 (5th Cir. 1975).  *Veytia-Bravo*, 603 F.2d at 1191.

[6] *See Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943) (Accident report completed by railroad employee not admissible under the business records exception to the hearsay rule because it was prepared primarily for use in litigation and not in the conduct of business.); and *Matthews v. United States*, 217 F.2d 409 (5th Cir. 1954) (statutorily required "sugar reports" to detect sales of substances used in the manufacture of distilled spirits were inadmissible as lacking necessary trustworthiness and because they were not used as an integral part of the business in its own interest.)

No. 11-50948

F.2d at 1191. This Court also noted that in *Matthews* the "business which recorded the sale had no incentive to keep the records with precision and completeness to show its compliance with any laws prohibiting certain types of transactions." *Id.* In *Matthews*, this Court established the following standard:

> So long as the accuracy and reliability of records sought to be introduced in evidence have been tested by the fact that a business concern carries on its own affairs from day to day in reliance upon such records, there is no departure from the standards of accuracy and trustworthiness that were basic in the historic rule permitting testimony from the shop book or book of account.

*Matthews*, 217 F.2d at 413-414.[7]

This Court has also said:

> Indeed, the rationale underlying this exception to the rule against hearsay is that the inherent reliability of business records is "supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed.R.Evid. 803(6), Notes of Advisory Committee on Proposed Rules. We have expressly recognized that the "'primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced.'" *United States v. Duncan*, 919 F.2d 981, 986 (5th

---

[7] This case is also factually similar to *Matthews* in that only purchases of sugar in large amounts were required to be reported. Here, pharmacies are only required to log purchases of packages containing in excess of 60 milligrams of pseudoephedrine, contrary to the majority's characterization of these as "systematic logs" of all purchases. *See* 21 U.S.C. § 830(e)(1)(A)(iii). Further, the majority's statement that these purchases "may or may not be legal" is misleading in that retailers are statutorily prohibited from selling pseudoephedrine in illegal amounts in any single transaction and there is absolutely no indication that these records are used "to detect unlawful sales activity by the keeper of the records." Were that the case, then, based on the majority's holding here, the involved pharmacies clearly engaged in unlawful sales activity. To the contrary, a retailer is not maintaining the logs in an attempt to prove it did not sell pseudoephedrine to a purchaser forbidden by law. As evidenced by this case, a retailer is not even maintaining the logs to ensure that it does not sell pseudoephedrine to someone who has already purchased a daily or monthly allotment. Rather, a retailer is merely complying with the requirement of keeping the records, without analyzing or relying on them and with no incentive to ensure accuracy, for the Government to possibly later use for some law enforcement purpose.

No.  11-50948

Cir.1990)(quoting *United States v. Veytia-Bravo*, 603 F.2d 1187, 1189 (5th Cir.1979)).

*United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001).

Further, to reiterate the comment to Rule 803(6) quoted previously herein, if the supplier of information does not act in the regular course of business, there is no assurance of trustworthiness.  Fed. R. Evid. 803(6), n. to para. (6).  *See also Broadcast Music, Inc., v. Xanthas, Inc.*, 855 F.2d 233, 238 (5th Cir. 1988); *Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930).

This is consistent with other authority.  For example, the Tenth Circuit has said:

> "The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information." *United States v. McIntyre*, 997 F.2d 687, 699 (10th Cir.1993). "If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails...." 2 *McCormick on Evidence* § 290 (Kenneth S. Broun, ed., 6th ed.2006); *McIntyre*, 997 F.2d at 699 (quoting *McCormick* with approval).

*United States v. Ary*, 518 F.3d 775 (10th Cir. 2008).

These cases clearly support a finding that the pseudoephedrine logs here are not business records.  There is no dispute that the pharmacies did not "necessarily rely" upon these records in the conduct of their own affairs.  To the contrary, the information in the logs is confidential and subject to non-disclosure with limited exceptions that do not include day-to-day business activities.  *See* 21 U.S.C. § 830(c).  *See also* Tex. Health & Safety Code § 486.0146.  As this Court's finding in *Veytia-Bravo* mandates, mere compliance with the requirement to keep the logs is not sufficient to establish that the pharmacies "necessarily relied upon these records in the conduct of its own affairs." *Veytia-*

No. 11-50948

*Bravo*, 603 F.2d at 1191.[8] Unlike in *Veytia-Bravo*, there is no indication that the pharmacies had any "incentive to keep the records with precision and completeness to show its compliance with any laws prohibiting certain types of transactions." *Id*.[9] There is no evidence that the accuracy and reliability of the pseudoephedrine logs "have been tested by the fact that a [pharmacy] carries on its own affairs from day to day in reliance upon such records." *Matthews*, 217 F.2d at 413-414. Where, as here, one party seeks to prove a substantive fact by the introduction of evidence that is compiled, not in connection with the pharmacies' own operations, but under sanction of federal statute, "none of the proofs of trustworthiness" is present. *Id.* at 414.

---

[8] In Footnote 5, the majority misapprehends the "section of *Veytia-Bravo* specifically distinguishing modern record keeping from that in *Matthews*." What this Court actually said was:

> To the extent that *Matthews* might be read as concluding that no record required to be kept by law could satisfy the trustworthiness requirement of the business records exception, it would now conflict with the realities of today's business world in which many, if not most, of the records of every business are required to be kept by some government edict.

*Veytia-Bravo*, 603 F.2d at 1191. This Court said nothing about "haphazard logging of sugar sales in the 1950s" but was merely saying that there are records, like the firearms records, that are required to be kept by law which may satisfy the trustworthiness requirement of the business records exception, unlike the logs here. Further, the majority's statement regarding the "immediate computerized logging of sales" is unsupported by any authority or evidence.

[9] The majority is correct that the Texas Department of State Health Services "may impose an administrative penalty on a person who violates this chapter." Tex. Health & Safety Code § 486.021. However, the Texas statute also provides that a "person is not liable for an act done or omission made in compliance with the requirements of Section 486.014 or 486.0141." Tex. Health & Safety Code § 486.0145. Notably, Section 486.014 is the section providing that a retailer must require a purchaser to display identification, either a driver's license or some other form of identification containing a photograph and indicating the person is over age sixteen (we do not know the form of identification used or required here), sign for the purchase (not provided on all of the logs here nor identified as Towns' signature on the others), and the information required to be recorded by the retailer, i.e., only the name, date, item and number of grams purchased. Tex. Health & Safety Code § 486.014. Thus, any liability for an act or omission in determining a purchaser's identity or in accurately recording the transaction is specifically limited. *See* Tex. Health & Safety Code § 486.0145.

23

No. 11-50948

For these reasons, the pseudoephedrine logs are not business records pursuant to Rule 803(6). The evidence in this case included only the pseudoephedrine transaction logs and the testimony of two alleged co-conspirators, admitted "cooks" and convicted drug offenders, offered in exchange for a reduction in sentence. Therefore, it is not evident that the transaction logs did not contribute to the jury's verdict. The district court's error was clearly not harmless beyond a reasonable doubt and I would reverse on this issue.

Accordingly, the arguments regarding authentication and the Confrontation Clause would be moot. However, because the majority holds otherwise, I will address these arguments in the alternative.

## II. Authentication

The majority relies on *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260 (5th Cir. 1991), to find that the logs were properly admitted as business records because of the qualifying affidavits offered to the court. In *Wilson*, the challenge was that the proper foundation was not laid for the admission of hospital records which included a statement by Wilson's sister to a social worker. *Id.* at 271-72. Wilson's objection was to the double hearsay contained in the business record. There was no claim that the records were not business records. The majority here misapprehends the discussion in *Wilson* regarding the accuracy of the sister's statement in the context of authentication. This Court found in *Wilson* that a proper foundation was laid for the hospital records and that the person attesting to the authenticity did not have to "personally attest to the accuracy of the information contained in the records." *Id.* at 272. This is because there was no dispute that the hospital records were indeed business records and that they had already cleared the first hurdle establishing the trustworthiness of the records. In other words, as discussed above, the accuracy and reliability of the hospital records had already been tested by the fact that the hospital carries on its own affairs from day to day in reliance upon those records. Here, the

24

pharmacy logs do not clear that first hurdle and, even if they did, they were not properly authenticated.

As set out above, Rule 803(6) requires that the conditions "are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D). The majority finds that the certificates provided with the logs are sufficient. I disagree.

This Court has said that "a qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of the business records exception are met." *United States v. Ned*, 637 F.3d 562, 570 (5th Cir. 2011). *See also United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008) (Affirmed the inadmissibility of pharmacy records for failure to offer a qualified witness to lay a foundation or timely affidavit.).

No such witness testified here. Only Officer Pieprzica, who compiled the log information into spreadsheets, testified regarding the logs. Pieprzica was unable to explain the system of organization or vouch that the requirements were met. Pieprzica specifically testified that each pharmacy had a different way of keeping the records, that the records were submitted in different formats, that he did not talk to or know the identity of the clerks who recorded the transactions, and no surveillance recordings of any transactions were ever requested during the investigation.

While the pharmacies did provide generic certifications from their respective corporate offices for the records, those certifications neither explained the record-keeping system of the organization nor vouched that the requirements of the business records exceptions were met.[10]

---

[10] The majority's note that these certifications mimic an applicable federal form nearly word for word does not establish foundation. The majority is correct that the rule does not require anything more for criminal cases than for civil cases. However, the rule also does not require anything less for authentication via certificate than it does for authentication via a qualified witness. Thus, whether by certificate or by qualified witness, a party must explain the record-keeping system of the organization and vouch that the requirements of the business

No. 11-50948

Further, it is impossible to determine the application of subsection (E) that "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness" as neither the certifications nor Pieprzica spoke to the source of the information or the method of preparation. Fed. R. Evid. 803(6)(E).

Pieprzica testified that he provided all of Towns' information to the various pharmacies when he inquired about any pseudoephedrine purchases. Without the proper foundation, we are unable to determine whether relevant information in the logs was obtained from Towns, from his driver's license or some other form of identification, from someone purporting to be Towns, or from law enforcement. And contrary to the majority's statements regarding Town's driver's license being recorded and his signature being obtained on some of the logs, there is absolutely no evidence in the record to establish that any pharmacy "recorded" Town's driver's license or that any of those differing signatures are his.

Thus, even if the logs were business records, they were not properly authenticated.

### III. Confrontation Clause

Notwithstanding that the logs are not business records, even if they were, the admission of the logs violated Towns' right to confrontation.

"The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *See* U.S. Const. amend. VI. The Supreme Court further stated the typical definition of "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. 51.

---

records exception are met.

No. 11-50948

This Court has acknowledged that, while business records are generally not testimonial in nature after *Crawford v. Washington*[11], there are exceptions.

In *Melendez-Diaz*, the Supreme Court held that the Confrontation Clause applied to testimonial business records. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321-324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The Court specifically said:

> Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial.

*Id.* at 324. This Court has also recognized that business records are not per se nontestimonial. *See Jackson*, 636 F.3d at 692.

Here, the logs were created for law enforcement purposes and were used to establish or prove some fact at trial - the fact that Towns and others purchased products containing pseudoephedrine. The logs were not created for the "administration of [the pharmacies'] affairs." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed. 2d 314 (2009). Therefore, the logs would be testimonial and in violation of the Confrontation Clause.[12]

Further, the Eighth Circuit case cited by the majority in finding that Towns' Sixth Amendment rights were not violated is distinguishable.

---

[11] 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

[12] I note that the majority also finds, without citation to authority, that the logs did not violate the right of confrontation because "requiring a driver's license for purchases of pseudoephedrine deters crime" and the "state thus has a clear interest in businesses creating these logs that extends beyond their evidentiary value." However, again, as discussed previously herein, we have no evidence that a driver's license was required, and a state's interest in the creation of records to deter crime does not allow a violation of the Confrontation Clause. The state most certainly would have an interest in a crime lab analyst creating records to deter crime, but the United States Supreme Court has found those records to be testimonial. *Melendez-Diaz*, 557 U.S. 305.

27

No. 11-50948

The Eighth Circuit found in *United States v. Mashek*, 606 F.3d 922, 930 (8th Cir. 2010), that the admission of pseudoephedrine logs did not violate Mashek's's constitutional confrontation rights. However, *Mashek* was decided under plain error review and does not fully address the applicable issues.

In *Mashek*, authorities obtained logbooks from several pharmacies after receiving information from multiple sources that Mashek was manufacturing meth and regularly carried firearms. *Mashek*, 606 at 926. Authorities obtained the cooperation of a frequent visitor to Mashek's home and arranged a controlled delivery of pseudoephedrine and lithium batteries. This transaction was recorded and Mashek said he would have meth later, but he needed to get anhydrous ammonia and camping fuel. Based on information that was recorded, officers believed that Mashek planned to steal anhydrous ammonia from a nearby farm and manufacture meth later that day. Authorities obtained a search warrant and discovered a large amount of evidence of meth manufacturing, including pseudoephedrine pills, empty blister packs, chemicals, equipment, etc., as well as firearms. *Id*. at 927.

Mashek filed a motion to suppress the evidence acquired during the search and also to suppress the pseudoephedrine logs. He cited Federal Rules of Evidence 401, 403 and 801. The district court denied the motion. The court further said that it would allow the evidence with the proper foundation and that Mashek could require that the government produce a witness to establish the foundation necessary to overcome a hearsay objection to the logs. *Id*. at 930. At trial, Mashek did not object to foundation, thus waiving his right to a live witness. Therefore, on appeal, the Eighth Circuit reviewed only on plain error. The court said:

> Assuming that Mashek did not waive his right to confrontation, *Melendez-Diaz* does not provide him any relief. The pseudoephedrine logs were kept in the ordinary course of business pursuant to Iowa law and are business records under Federal Rule

> of Evidence 803(6). Business records under Rule 803(6) are non-testimonial statements . . . to which the Confrontation Clause does not apply. Thus, the admission of the pseudoephedrine logs did not violate Mashek's constitutional confrontation rights.

*Mashek*, 606 at 930. Mashek was convicted of attempt to manufacture meth, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Rule 803 requires that the custodian of the business records or another qualified witness must lay a foundation before records are admitted. Mashek did not object to foundation, thus he waived any argument regarding whether the logs were business records. The logs in *Mashek* were not used to establish a crime related to the purchase, but merely corroborated the crime to which Mashek agreed on the recording of the controlled delivery and the evidence obtained pursuant to the search. He was convicted of attempt to manufacture. Here, Towns objected repeatedly to the foundation and the records were testimonial.

## IV. Safety Valve

The statutory minimum sentence in this case is ten years. 21 U.S.C. § 841(b)(viii). However, 18 U.S.C. section 3553(f) provides a limitation on the applicability of the statutory mandatory minimum sentence. With regard to a safety valve sentence reduction, the district court said:

> But – I agree that you can go to trial, you are found guilty, and then later try to get safety valve. But to do that, you can't during the safety valve hearing plead continued innocence and not say that you know something about the crime that was committed.
> And that is what your client did in the transcript, as I read it. He continues to maintain he is innocent of the charges in this case.

There is no requirement that Towns must admit guilt under the statute, which says, in relevant part:

No. 11-50948

> [N]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

Towns admitted that he had purchased pseudoephedrine.[13]  Towns admitted that he had used meth in the past.  Towns admitted knowing Sanders, West and Grier.  Towns even passed a polygraph examination in an attempt to establish that he was being truthful.

The district court repeatedly said that the sentence of ten years was too high, but that the safety valve was inapplicable and it had "no choice legally." As there is no requirement under the safety valve that Towns admit guilt, the district court erred by not granting the safety valve relief and I would also reverse on this issue.

## CONCLUSION

Because the district court erred in admitting the pseudoephedrine transaction logs and in refusing to consider a safety valve sentence reduction, I would reverse and remand.  Thus, I respectfully dissent.

---

[13] Notably, the Government concedes in its brief that purchasing multiple packages of pseudoephedrine from different stores is not illegal unless it exceeds the statutorily allowed amounts.